[Crim. No. 12621.  Second Dist., Div. Four.  Jan. 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WENDELL
EARL BERRY, Defendant and Appellant.

Harvey G. Cooper, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse, Michael C. Gessford and Edward A. Hinz, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was originally charged with five counts of violation of section 288 of the Penal Code. Trial by jury was duly waived and the matter was submitted on the transcript of the preliminary examination. On motion of the People, the information was amended, by interlineation, so as

to include language charging a violation of section 647a of the Penal Code. Thereafter, the following proceedings occurred:

"MR. GERAGOS [deputy district attorney]: With reference to the Court's determination of this matter, I would like to state at this time that the People did move to amend this Information to give the Court wider latitude in its findings in this matter. Specifically, it is 647a (1) of the Penal Code, which would be an included offense.

"My reason for so stating is this; that the transcript so reflects that there had been drinking on the part of the defendant, which would go to his mental factor.

"Secondly, the nature of the testimony of the complaining witness, as it is reflected in the transcript.

"And, thirdly, the fact of the peculiar facts of this situation, and the complaining witness and her age and her degree of precociousness, as indicated by the Court's viewing her in the courtroom.

"I think all those factors bear on the degree of guilt this defendant should bear, and it is the opinion of the People, as represented by myself here, that this is a proper situation for the Court to find the defendant guilty of the included offense.

"MR. MAPLE [defendant's counsel]: I have no other comments except that I join with Mr. Geragos in his analysis, I share his view."

Thus prompted, the trial court found defendant guilty of a violation of section 647a of the Penal Code, a lesser and included offense. The criminal proceedings were then suspended, doctors were appointed, and a date was set for a hearing under the Mentally Disordered Sex Offender Act. On the date so set (March 3, 1965), the totality of the proceedings were as follows:

"The Court: Wendell Earl Berry.

"The Court has read and considered the probation report and the reports of Doctors Edwin McNiel and Dayrel Smith, which indicate the defendant is a mentally disordered sex offender.

"MR. MAPLE: It would appear that that is the doctors' opinion, your Honor.

"THE COURT: The Court having read the probation report and the doctors' reports, Dr. Edwin McNiel and Dr. Dayrel Smith, the defendant will be committed temporarily to the Atascadero State Hospital for a period of not to exceed 90 days for observation and for receipt of a report back on their findings within said 90-day period.

"Mr. Maple: Thank you very much, your Honor."[1]

Thereafter defendant was returned from Atascadero with a report from the superintendent that he was a mentally disordered sex offender and not amenable to treatment in a state hospital. Proceedings were then instituted looking toward the possibility of an indefinite commitment under section 5512 of the Welfare and Institutions Code. However, by stipulation, and pursuant to a revised report from the superintendent, those proceedings were terminated and, on July 26, 1965, defendant was recommitted to Atascadero for a second 90-day period of observation.[2]

The next step in the proceedings was a report by the superintendent at Atascadero that defendant was a mentally disordered sex offender who would benefit by treatment at that institution. Pursuant to that report, on October 18, 1965, an order for defendant's indefinite commitment for treatment was made and entered.[3]

In March of 1966, the superintendent transmitted a report, purportedly pursuant to subdivision (b) of section 5517 of the Welfare and Institutions Code, to the effect that defendant was a mentally disordered sex offender, but would not profit by further treatment in the hospital, and recommending that he be committed to the Department of Mental Hygiene for an indefinite period. Pursuant to the report, defendant was returned to the trial court and, after a discussion between court and counsel, the court, on April 27, 1966, announced an order committing him to the Department of Mental Hygiene for an indefinite period, as provided by section 5518 of the Welfare and Institutions Code.[4] However, the commitment

---

[1]The formal order of commitment, as did the order in *People* v. *Succop* (1966) 65 Cal.2d 483 [55 Cal.Rptr. 397, 421 P.2d 405], erroneously read that the court had found defendant "is" a mentally disordered sex offender whereas it should have read that the court found that he "is a probable" mentally disordered sex offender. Inasmuch as the entire order must be vacated, it is unnecessary to order a correction of the error in terminology.

[2]This order, also, contained the same error in terminology as did the order of March 3, 1965, commented on in footnote number 1. In accordance with the suggestion in *Succop*, the order of July 26, 1965, is modified by deleting therefrom, in each of the two places where it occurs, the phrase "is a mentally disordered sex offender," and substituting therefor the phrase "is a probable mentally disordered sex offender."

[3]Although, as indicated above, when, in June of 1965, it had appeared that an order for an indefinite commitment to Atascadero had seemed imminent, defendant had sought to secure the formal hearing guaranteed to him by section 5512 of the Welfare and Institutions Code, there is no indication that he had sought a similar hearing after the October order.

[4]"The Court will therefore order the defendant committed to the Department of Mental Hygiene for an indeterminate period and sent to

order, prepared and entered by the clerk, did not follow the trial court's announcement but, instead recommitted him to Atascadero for an indefinite period. We are advised by counsel that it was this order which was carried into execution and that defendant was, for the third time, sent to Atascadero.

In June of 1967 the superintendent at Atascadero again reported that defendant was not amenable to further treatment. He was again returned to the trial court which, this time, on July 12, 1967, reinstituted the criminal proceedings, imposed a six-month jail sentence, which was then suspended and defendant was placed on probation for a three-year period.[5]

At the hearing before this court, the Attorney General advised us of the proceedings held on July 12, 1967, and filed with us certified copies of the records of the superior court summarized in the text. It was stipulated that we might consider those documents for the limited purpose of determining what orders we should enter here in case we did not affirm the orders before us on the noticed appeal. We discuss later the effect of the July 12th proceedings on our orders herein.

On his behalf, defendant's court-appointed counsel has urged, on this appeal, two errors: (1) that the original finding of guilt was void as having been the result of what was tantamount to a plea of guilty not joined in by the defendant; and (2) that defendant was entitled to a jury trial in connection with the commitment order of April 27, 1966. For reasons hereinafter set forth, we reject both of these contentions. However, as we shall point out, there are other errors appearing on the face of the record which compel a vacation of some of the orders in the mentally disordered sex offender proceedings.

I

We have quoted above the oral proceedings which culminated in the original finding that defendant was guilty of the lesser, misdemeanor, offense of a violation of section 647a of the Penal Code. ▮▮▮ It is true that the record does not expressly show that defendant had personally agreed to allow his counsel to make what was clearly an admission of guilt to

the Reception and Guidance Center, California Institute for Men at Chino, California, pursuant to the provisions of Sections 5512 and 5518 of the Welfare and Institutions Code.''

[5]Defendant's notice of appeal was ''from said conviction and judgment entered this 27th day of April, 1966.'' We treat the notice as a valid notice of appeal from the appealable order of commitment. (*Gross* v. *Superior Court* (1954) 42 Cal.2d 816 [270 P.2d 1025].

that lesser offense. It is also true that a plea of guilty, in any form, may not be made except with the personal participation of defendant in open court. However, defendant did not object to this procedure until it was suggested by his court-appointed counsel on this appeal. He personally agreed to a commitment to Atascadero in July of 1965, his own notice of appeal herein objected only to the 1966 indefinite commitment order, and he has since accepted probation under a misdemeanor sentence. We think that this indicates that he had, in fact, agreed to the favorable disposition of the criminal charge suggested by the deputy district attorney and that he cannot now, after felony charges have been dismissed, repudiate an arrangement of which he clearly was aware at the time it was consummated.[6]

## II

█ Insofar as the order of April 27, 1966, was one committing defendant for an indefinite period to the Department of Mental Hygiene under section 5518 of the Welfare and Institutions Code, the contention that defendant was entitled to a jury trial is without foundation. As we pointed out in *People* v. *Fuller* (1964) 226 Cal.App.2d 331 [38 Cal.Rptr. 25], proceedings under the Mentally Disordered Sex Offender Act are civil in nature and there is no constitutional right to a jury trial therein. The Legislature has provided for a jury trial at the stage in the proceedings when an indefinite commitment is first contemplated—namely when the commitment is for treatment in the state hospital under the provisions of section 5512 of the Welfare and Institutions Code. But it has not provided for the use of a jury either prior to, or after, that stage. █ In fact, once the order for an indefinite commitment to Atascadero has been made, subsequent proceedings under either section 5518 or 5519 have merely the effect of transferring the defendant from one institution to

---

[6]We have read the record of the preliminary examination. It clearly shows the commission of the five felonies charged in the information; the record discloses no defense evidence. Under these circumstances, the amendment that made possible judicial consideration of a misdemeanor conviction under section 647a, and the finding of guilt of that lesser offense, was the most favorable disposition imaginable. The whole record suggests that the proceedings in the superior court were the result of an out-of-court agreement between counsel, pursuant to which the deputy district attorney initiated the amendment to the information and suggested to the trial court that leniency should be granted to defendant. Defendant was then represented by an experienced deputy public defender. We cannot presume that he had not advised his client of the arrangements being made on his behalf nor that he had not secured defendant's consent to them.

another—a decision which could constitutionally have been made by administrative rather than by judicial proceeding— or they result (to a defendant's advantage) in a reduction in the term of confinement whenever the court elects to impose a criminal sentence for a fixed term in lieu of a commitment to the Department of Mental Hygiene for an indefinite term. In any case, no constitutional right of defendant is violated by a statute which requires only a court and not a jury hearing at this stage.

### III

It is clear from the record before us that the original order of March 3, 1965, committing defendant to Atascadero for observation was void. It suffered from all of the procedural defects which had occurred in the proceedings reviewed in *People* v. *Succop* (1967) 67 Cal.2d 785 [63 Cal. Rptr. 569, 433 P.2d 473], and in *In re Kramer* (1967) *ante,* p. 287 [63 Cal.Rptr. 569]; there was no certification as required by section 5501.5, defendant was not advised of his rights to make a reply and to produce witnesses, as is required by section 5503, and the proceedings on March 3, 1965, do not comply in any significant respect with the hearing requirement of section 5512. That order was void. (*Specht* v. *Patterson* (1967) 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209]; *People* v. *Succop, supra* (1967) 67 Cal.2d 785.) We order it vacated.

### IV

However, the order of July 26, 1965, is not void. While the procedural provisions of section 5501 et seq. of the Welfare and Institutions Code are prerequisites to a valid commitment for observation, and while they may not be waived by mere silence (*In re Jones* (1964) 61 Cal.2d 325 [38 Cal.Rptr. 509, 392 P.2d 269]), still they may be waived by an express consent of the defendant. (*In re Cruz* (1965) 62 Cal.2d 307 [42 Cal.Rptr. 220, 398 P.2d 412].) The record of the proceedings in the trial court on July 26, 1965, discloses that the commitment order then made was made with the consent of, and in fact on the motion of, defendant; he cannot now object that procedural provisions which he thus waived were not followed. As we have pointed out in footnote number 2, above, we direct a correction in the terminology of that order.

738

## V

■ It is obvious that erroneous clerical and administrative action followed the court proceedings on April 27, 1966. Defendant had been returned to court pursuant to an unfavorable report from the superintendent under section 5517, subdivision (b). Following such a report, the trial court has only two alternatives: it may make a commitment for an indefinite period to the Department of Mental Hygiene, or it may resume the criminal proceedings and impose any lawful criminal sentence. (Welf. & Inst. Code, § 5518.) The whole record of the discussion between the trial court and defendant's then counsel shows that the latter was urging the court to select the second alternative and grant probation and that the trial court consciously and deliberately rejected that alternative and selected, instead thereof, the indefinite commitment to the Department of Mental Hygiene.

Nowhere in the statute is the trial court given power, after a report under subdivision (b) of section 5517 to order a defendant recommitted to Atascadero for any purpose.[7] It follows that the commitment order of April 27, 1966, as entered in the minutes of the court, is void, both because it does not reflect the order made by the court and because it is totally without statutory authority. We order that it be vacated and that the true order be substituted therefor in the records of the court.

## VI

■ In spite of the invalidity of the formal commitment order of April 27, 1966, and the illegal detention at Atascadero that followed, the proceedings thereafter taken on July 12, 1967, need not fail entirely. The order then made was one which the court could have made in April of 1966—namely to resume the criminal proceedings and pronounce sentence. To that extent, it is a valid order.

However, as we have said, the commitments to Atascadero from March 3, 1965, to July 26, 1965, and from April 27, 1966, to July of 1967, were illegal. Defendant is entitled to credit against any criminal sentence for the time so served. (*People* v. *Foster* (1967) 67 Cal.2d 604, 608 [63 Cal.Rptr. 288, 432 P.2d 976].) But the maximum sentence that could have been imposed on defendant for a violation of section

---

[7]It will be noted that the recommitment order of July 26, 1965, was legally permissible only because the superintendent had withdrawn his original report and submitted a new one seeking the recommitment for further observation.

647a of the Penal Code was one year in the county jail—a period of time for which he already was entitled to credit when he came before the trial court on July 12, 1967. The only action which the trial court could validly have taken, on that date, in the criminal proceeding, was to impose a misdemeanor sentence and then to order that defendant be discharged from further custody as having already served the sentence so imposed. Since the judgment of July 12, 1967, is not formally before us for review on the present appeal, we cannot herein order it to be so corrected. However, we have no doubt that, on remand, the trial court will take the necessary steps to correct its own order by deleting the invalid portion and substituting a valid order as above indicated.

The order of March 3, 1965, is vacated; the order of July 26, 1965, is modified as indicated in footnote number 2 of this opinion; the formal commitment order appearing in the court's minutes under the date of April 27, 1966, is vacated and the trial court is directed to cause a revised commitment order, couched in the terms used by the trial judge in the oral court proceedings of that date, to be substituted in place of the commitment order herein vacated; the case is remanded to the trial court for the purpose of such further proceedings as are consistent with this opinion.

Files, P. J., and Jefferson, J., concurred.