[Crim. No. 2881.   Fourth Dist., Div. One.   Mar. 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH FINLEY ARMSTRONG, Defendant and Appellant.

Peter B. Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael J. Smolen, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was convicted of the offense of lewd and lascivious conduct upon the body of a child under the age of 14 years, a violation of Penal Code, section 288.[1]

---

[1]Defendant was charged in three counts with the offenses of lewd and lascivious acts upon the body of three children. It does not appear whether he was convicted of more than one of these offenses.

Imposition of sentence was suspended and proceedings were commenced under the statute providing for the commitment, care and treatment of mentally disordered sex offenders, viz., Welfare and Institutions Code, section 5500 et seq. The proceedings were conducted in three stages, each by a different judge, resulting respectively in (1) an order dated April 9, 1964, pursuant to Welfare and Institutions Code, section 5512, declaring defendant a probable mentally disordered sex offender, hereinafter referred to as a MDSO, and committing him for observation; (2) an order dated June 30, 1964, also pursuant to section 5512, finding him to be a MDSO who would not benefit by care or treatment in a state hospital and was a danger to the health and safety of others, and committing him for an indeterminate period to the Department of Mental Hygiene for placement in the state institution provided pursuant to Welfare and Institutions Code, section 5518; and (3) an order dated March 27, 1967, pursuant to Welfare and Institutions Code, section 5519, recommitting him to the Department of Mental Hygiene as a dangerous MDSO not amenable to treatment.

Defendant appeals from the latter order contending it is in error because, among other things, the proceedings under stages (1) and (2) denied him due process of law, and the orders of commitment to a state hospital for observation and to the Department of Mental Hygiene for an indeterminate period for placement in a state institution were void.

We reject defendant's contention respecting the invalidity of the order under stage (1), upon the ground he personally consented to placement for observation and thus waived any objection to the order. (*In re Cruz*, 62 Cal.2d 307, 312-313 [42 Cal.Rptr. 220, 398 P.2d 412]; see also *People* v. *Berry*, 257 Cal.App.2d 731, 737 [65 Cal.Rptr. 125].)

On the other hand we conclude the proceedings in stage (2) were fatally defective, and the order adjudging defendant a MDSO who would not benefit by treatment and was dangerous, and committing him to the Department of Mental Hygiene for an indefinite period, was void.

Pertinent parts of Welfare and Institutions Code, section 5512 setting forth the stage (2) proceeding provide, in the event the superintendent of the hospital to which the person had been committed for observation reports to the committing court he is a mentally disordered sex offender but will not benefit by care or treatment and is a danger to the health and safety of others, the court shall cause the person to be

returned to the court in which the criminal charge was tried; the latter court shall resume the proceedings and impose sentence or, if satisfied the person is a dangerous MDSO not amenable to treatment, may recertify him to the superior court; and if the superior court, "after hearing" finds the person to be a dangerous MDSO not amenable to treatment, it may commit him for an indeterminate period to the Department of Mental Hygiene for placement in a state institution.

In the case at bench the superintendent of the hospital to which defendant had been committed for observation, reported he was a dangerous MDSO not amenable to treatment. Thereupon the matter was "remanded" to a department of the superior court "for further hearing and disposition in accordance with law." The judge of that department contemporaneously considered the dual questions whether to sentence defendant to prison or place him with the Department of Mental Hygiene for an indeterminate period. Defendant's contention these proceedings must be bifurcated and the hearings conducted by different judges is without merit. Such a procedure is not required by the statute; where the court consists of only one judge would be impossible; and under circumstances such as in the instant case would serve no useful purpose. (Gen. see *People* v. *Howerton,* 40 Cal.2d 217, 219 [253 P.2d 8].)

At the stage (2) hearing in question defendant was present and represented by counsel; no witnesses testified; the court determined the issues upon information contained in a supplemental probation officer's report which incorporated a report by letter from the superintendent of the state hospital where defendant had been under observation; defendant was not confronted by nor given the opportunity to cross-examine the author of this letter; defense counsel argued the insufficiency of the letter-report to establish defendant was a dangerous person; the judge expressed his belief defendant was in need of treatment and it would be better to send him to "a state institution for that purpose, rather than state prison"; and, on this basis, the written commitment order found defendant "to be a mentally disordered sexual offender, constituting a danger to the health and safety of others not amenable to hospital treatment at the present time." This hearing did not satisfy the statutory or constitutional due process requirement in the premises.

The stage (2) proceeding prescribed by Welfare and Insti-

tutions Code, section 5512 provides for a "hearing"; requires the court to make certain findings as a condition to further commitment, i.e., that the person is a dangerous MDSO not amenable to treatment; and directs that at the hearing the person charged shall be entitled to present witnesses on his behalf, to be represented by counsel, and to cross-examine witnesses who testify against him.

Thus, the issue for determination is whether the type of hearing contemplated by the statute requires the presentation of evidence in the manner and of the kind ordinarily required as a basis for judicially determined findings of fact.

It is noteworthy with respect to a hearing following a report by the superintendent recommending continued treatment in the hospital, the statute expressly provides:

"Upon such hearing the court may accept the report of the superintendent of the hospital . . . , if verified, in lieu of the examination by and testimony of court-appointed psychiatrists, or may consider the report as additional evidence." (Former Welf. & Inst. Code, § 5512.) The omission of a similar provision from that part of the statute prescribing the hearing following a report the person charged is a dangerous MDSO not amenable to treatment indicates a legislative intent the report of the superintendent, absent a stipulation to the contrary, may not be considered as evidence in the proceedings, and the findings the court is required to make must be based on the testimony of witnesses. (See *City & County of San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244, 251 [135 P. 971]; *In re Dees*, 50 Cal.App. 11, 19 [194 P. 717]; see also *People* v. *Bennett*, 245 Cal.App.2d 10, 24 [53 Cal.Rptr. 579].)

██ Where uncertain, a statute will be interpreted to give it meaning consistent with constitutional requirements. (*County of Madera* v. *Gendron*, 59 Cal.2d 798, 801 [31 Cal. Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555]; *Erlich* v. *Municipal Court*, 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].)

██ Compliance with the constitutional guarantee of due process of law requires the hearing in proceedings to determine whether a person is a dangerous MDSO not amenable to treatment, and for this reason should be committed for an indeterminate period to the Department of Mental Hygiene as prescribed by Welfare and Institutions Code, section 5512, must afford such person "all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him." (*United States* v. *Maroney*, 355 F.2d 302, 312; *Specht*

v. *Patterson,* 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209, 1212].) The subject statute must be interpreted accordingly.

In the case of *In re Kramer,* 257 Cal.App.2d 287, 291 [64 Cal.Rptr. 686], the court pertinently observed:

"Courts and attorneys must recognize that sex psychopathy proceedings may have consequences much more serious than the prison term prescribed in the Penal Code. If the court finds the person is a danger to others but will not benefit by treatment in a state hospital, the court may, in its discretion, commit him for placement in an institution under the jurisdiction of the Department of Corrections (i.e., a state prison), there to remain until he is no longer a danger to others. For a prisoner who has been officially declared to be both dangerous and not treatable, the prospects of proving a recovery are bleak. The practical effect of the civil commitment may be life imprisonment without possibility of parole. A decision to impose such a commitment should be arrived at only after proceedings which are appropriate to the gravity of the issue."

■ A hearing, such as that under review in the case at bench, in which the only evidence in support of the findings required to commit a person for an indeterminate period to the Department of Mental Hygiene for placement in a state institution is the written report of a hospital superintendent, does not comply with the statutory or constitutional requirements in the premises, unless the parties stipulate to such a procedure. The commitment order of June 30, 1964 which was the product of such a hearing is void (*People* v. *Succop,* 67 Cal.2d 785, 789 [63 Cal.Rptr. 569, 433 P.2d 473]; *People* v. *McDonald,* 257 Cal.App.2d 846, 849 [65 Cal.Rptr. 530]; *People* v. *Berry, supra,* 257 Cal.App.2d 731, 737; *In re Kramer, supra,* 257 Cal.App.2d 287, 289; *People* v. *Harvath,* 251 Cal. App.2d 780, 783 [60 Cal.Rptr. 15]; *People* v. *Loignon,* 250 Cal.App.2d 386, 390 [58 Cal.Rptr. 866]); and must be set aside. (*People* v. *Berry, supra,* 257 Cal.App.2d 731, 738; *People* v. *Loignon, supra,* 250 Cal.App.2d 386, 390.)

■ Jurisdictional to a valid recommitment order under Welfare and Institutions Code, section 5519 is a prior valid commitment order under Welfare and Institutions Code, section 5512. (*People* v. *McDonald, supra,* 257 Cal.App.2d 846, 849-850; *People* v. *Loignon, supra,* 250 Cal.App.2d 386, 790-791.)

The recommitment order of March 27, 1967 which is the

subject of this appeal, lacking a prior valid commitment order, must be reversed.

. Defendant has urged other contentions which, in light of our conclusions aforesaid, we need not consider.

The recommitment order appealed from is reversed; the commitment order of June 30, 1964 is set aside; and the proceedings are remanded to the trial court with instructions to take such further action therein, in harmony with the views expressed in this opinion, as may be proper under the law and the facts in the premises.

Brown (Gerald), P. J., and Whelan, J., concurred.