[Crim. No. 12626. Second Dist., Div. Three. Mar. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN LEE BROWN, Defendant and Appellant.

John Lee Brown, in pro. per., and Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—Defendant was charged by information with violation of section 288 Penal Code (lewd and lascivious act upon the body of a child under 14 years of age) in two counts. He was also charged with four prior convictions of felony and with having served a term of imprisonment in the state prison upon each of such convictions. The priors alleged were for burglary, a felony, in the State of Alabama on April 4, 1938; attempted robbery, a felony, on October 18, 1955, in the State of California; burglary, a felony, on October 18, 1955, in the State of California, and violation of section 288 Penal Code, a felony, on October 15, 1962, in the State of California.

Defendant entered a plea of not guilty and on the day set for trial he admitted the truth of the allegations with respect to the second, third and fourth priors and the allegations as to the first prior were stricken on motion of the district attorney.

The cause was tried before a jury which returned its verdicts finding the defendant guilty as charged on both counts.

The minutes of the court disclose that on May 10, 1966, upon the return of the jury verdicts, a probation report was ordered, the probation hearing, motion for a new trial, sentencing, "and further proceedings under Section 5504 Welfare and Institutions Code" were continued to June 9, 1966. Two psychiatrists were appointed to examine the defendant and to make their reports pursuant to the provisions of section 5504 of the Welfare and Institutions Code. On June 9, 1966, the record discloses that the motion for a new trial was denied as to count one and was granted as to count two, and that count two was dismissed on motion of the district attorney. At this time, according to the court's minutes, the trial judge made the following finding: "The Court finds that Defendant is. a Mentally Disordered Sex Offender but will not benefit by hospital treatment." Probation was denied, and the defendant was sentenced to state prison. There is nothing in the record to indicate that the defendant was ever certified for hearing to determine whether he was a mentally disordered sex offender within the meaning of chapter 4, part 1. division 6, of the Welfare and Institutions Code, as provided by section 5501 of such code, or that a hearing was had to determine such question as is provided in sections 5503 et seq. of such code.

Section 1203 of the Penal Code provides in part that "except as hereafter provided in this section, probation shall not

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

be granted . . . to any defendant unless the court shall be satisfied that he has not been twice previously convicted of felony in this state. . . .

"In unusual cases, otherwise subject to the preceding paragraph, in which the interests of justice would best be served thereby, the judge may, with the concurrence of the district attorney, grant probation." There was no finding by the trial judge that the case was unusual, and that it was one in which the interests of justice would best be served by the granting of probation, nor is there anything in the record to indicate that the district attorney would have concurred in the granting of probation, had the trial judge made such a finding and indicated his desire to grant probation. Section 5500.5 of the Welfare and Institutions Code provides in part that "this article shall not apply . . . to any person ineligible for probation under the Penal Code."

The defendant urges three grounds of error upon which he seeks a reversal of the judgment. They are (1) insufficiency of the evidence to sustain the verdict; (2) the trial court erred in finding him to be a mentally disordered sex offender, and (3) error in the giving of instructions.

*The Facts*

In January 1966, Cynthia, who was 11 years of age, was living at 464 East 27th Street, in the City of Los Angeles with her mother, father, brother and grandmother. Defendant, Cynthia's uncle, came to her house on January 29, 1966; he drove into the driveway, got out of his vehicle and came upon the porch of the house, at which time he asked Cynthia if her mother or her father was at home. Cynthia replied that they were not at home. Defendant then said that he would like to see Cynthia's grandmother, who at that time was not well and was confined to her bed. She opened the door for defendant who then went to the grandmother's room. Finding the grandmother asleep, the defendant then told Cynthia to go to the bathroom. Cynthia refused this request, whereupon the defendant shoved her into the bathroom and closed and locked the door.

In the bathroom the defendant told Cynthia to pull up her dress. Upon her refusal to comply with this request, the defendant pulled down her underpants, grabbed both of her arms and forced her to lie on her back on the floor. At this juncture, Cynthia testified that the defendant unbuttoned her blouse and began "to play with my breasts and between my legs." The defendant then dropped his pants and placed his private parts

between Cynthia's legs, touching her private parts. After this was over the defendant left the bathroom after telling Cynthia to "wash up." Cynthia remained in the bathroom where she washed what she described as a "white and slimy like" substance from her privates and from between her legs.

The defendant told Cynthia not to tell her mother what he had done to her and said that if she did tell her mother, "he would do something worser." Cynthia testified that when her mother came home on the night of January 29th, she questioned Cynthia about the way she was walking, she examined Cynthia's privates then took her to a doctor. Cynthia then told her what had happened.

Cynthia's mother testified that when she saw Cynthia, she appeared to be walking as if in pain, "it was an unusual walk, as if she were . . . as if she was hurting or something"; she then examined Cynthia's privates and "She had heavy white liquor up in her," and the exterior of her privates were bruised, soiled and very dirty; she took her to a doctor who examined her; that Cynthia then told her what had happened.

The defendant testified that he had gone to Cynthia's house on January 29, 1966; had driven his car into the driveway and blew his horn; he stopped his vehicle and walked to the garage to look for a case of soap; as he was looking for the soap, Cynthia came to a window of the house and called out saying, "Hey, what is the big idea . . . Mommy is not here"; he did not enter or approach the house; he said "Well, I guess I will take one of the puppies with me now, one of the dogs here with me now," and Cynthia responded, "Oh, no, don't do that Johnny," whereupon he backed his car out of the driveway and left, telling Cynthia to "Tell Ethel [Cynthia's mother] that I have been by here, and I will see you later." Defendant testified further that he had never placed his hands on Cynthia "in my whole life."

 The defendant points out certain inconsistencies between Cynthia's testimony at the preliminary hearing and her testimony at the trial relating to the time of day that the offense occurred and to the type of shoes the defendant was wearing at such time. We have examined the record of the oral proceedings in these respects and we cannot say, as a matter of law, that these discrepancies are of such a nature as to totally destroy the testimony of the complaining witness.

 The court on appeal will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could

not have been found by the jury to warrant the inference of guilt. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) The testimony here furnishes sufficient facts to sustain the jury's finding of guilt.

 The defendant's contention that the trial court erred in finding him to be a mentally disordered sex offender must be sustained. The Legislature, in enacting section 1203 of the Penal Code, laid down the policy of the law to be that a defendant who had twice previously been convicted of felony was ineligible to receive probation, unless the judge found that the defendant's case was an unusual one in which the interests of justice would best be served by the granting of probation, and where there was such a finding by the judge, then before probation could be granted it would be necessary to obtain the concurrence of the district attorney before the judge could act in accordance with such finding. It is our opinion that it was unnecessary for the trial court to have found that the defendant's case was not unusual and that the interests of justice would not be best served by the granting of probation in order to render him ineligible therefor, as the Legislature had already rendered such a finding immaterial. We are of the opinion that in the case at bench the defendant was ineligible to receive probation by reason of his prior convictions, under the policy declared by the Legislature, and that he remained ineligible unless the court made a positive finding in his favor, as provided in section 1203 of the Penal Code, and the district attorney concurred in granting probation. (*People* v. *Cox*, 259 Cal.App.2d 653 [66 Cal.Rptr. 576], 2d Crim. 13036, decided Feb. 29, 1968; but see *People* v. *McGill*, 257 Cal.App. 2d 759, 763-764 [65 Cal.Rptr. 482].)[1]

 The defendant being ineligible for probation, it was error for the court to consider proceedings under sections 5500 et seq. of the Welfare and Institutions Code. Assuming that it was the intent of the trial judge to invoke the procedures provided in the above sections, the record discloses that such procedures were not followed. In the circumstances here shown it was error for the trial court to make a finding that the defendant was a mentally disordered sex offender. (*People* v. *Foster*, 67 Cal.2d 604, 608 [63 Cal.Rptr. 288, 432 P.2d 976];

---

[1]The court in *McGill*, in referring to language found in *People* v. *Ware*, 241 Cal.App.2d 143 [50 Cal.Rptr. 252], states that such language suggests that in order to make a person convicted of an offense wholly ineligible, the court should make an express finding that the case is not an unusual one where the interests of justice demand a departure from the declared policy of the Legislature.

*People* v. *Succop*, 67 Cal.2d 785 [63 Cal.Rptr. 569, 433 P.2d 473].)

■ The defendant urges that the instructions given relating to the credibility of a witness and the right of the jury to be the sole judge of the credibility of a witness in the face of conflicting statements bearing upon the impeachment of such witness, were confusing and prejudicial. The criticized instructions are set forth below.[2] Defendant contends that these instructions told the jury to disregard any testimony tending to impeach the prosecutrix. We do not agree with this

[2] "Every person who testifies under oath is a witness. You are the sole and exclusive judges of the credibility of the witnesses who have testified in this case. In judging the credibility of witnesses, you shall have in mind the law that a witness is presumed to speak the truth. A witness, however, may be impeached and this presumption overcome by contradictory evidence; by the manner of the witness on the stand; the degree of intelligence exhibited by him; the character of his testimony; by evidence showing his motive or interest in the outcome of the case or his bias or prejudice for or against one of the parties; by evidence that on some former occasion he made a statement or statements inconsistent with his present testimony; by evidence adversely affecting the character of the witness for truth, honesty, or integrity; or by proof that he has been convicted of a felony. You will note that I do not say that any of the matters I have mentioned do overcome the presumption that the witness is speaking the truth; I only say that they may overcome that presumption. It is for you to decide whether they do or do not. The impeachment of a witness does not necessarily mean that his testimony is completely deprived of value, or that its value is destroyed in any degree. The effect, if any, of the impeachment upon the credibility of the witness is for you to determine. A witness wilfully false in one material part of his testimony is to be distrusted in others. You may reject the whole testimony of a witness who wilfully has testified falsely as to a material point, unless, from all the evidence, you shall believe the probability of truth favors his testimony in other particulars. However, discrepancies in a witness's testimony or between his testimony and that of others, if there were any, do not necessarily mean that the witness should be discredited. Failure of recollection is a common experience, and innocent misrecollection is not uncommon. It is a fact, also, that two persons witnessing an incident or a transaction often will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance."

"You are not bound to decide in conformity with the testimony of a number of witnesses which does not produce conviction in your mind, as against the declarations of a lesser number or a presumption or other evidence which appeals to your mind with more convincing force. This rule of law does not mean that you are at liberty to disregard the testimony of the greater number of witnesses merely from caprice or prejudice, or from a desire to favor one side as against the other. It does mean that you are not to decide an issue by the simple process of counting the number of witnesses who have testified on the opposing sides. The final test is not in the relative number of witnesses, but in the relative convincing force of the evidence."

"The impeachment of a witness does not necessarily mean that [his] [or] [her] testimony is completely deprived of value, or that its value is destroyed in any degree. The effect, if any, of the impeachment upon the credibility of the witness is for you to determine."

contention. The instructions, viewed as a whole, gave the jury a reasonable and proper guide as to its duty in weighing and judging the credibility of testimony received in evidence.

The order determining the defendant to be a mentally disordered sex offender is vacated. The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1968.