[Crim. No. 6400. First Dist., Div. One. May 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CALVIN B. VAUGHN, Defendant and Appellant.

44

Jules F. Bonjour, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from an order denying his application for a writ of *coram nobis*.[1] On December 15,

---

[1] The notice of appeal refers to "the order of the above entitled court made on December 23, 1966, denying said defendant [*sic*] petition for Writ of Error Coram Nobis and Amended Petition for Writ of Error Coram Nobis." The record contains no order dated December 23, 1966. According to the reporter's transcript the proceedings on December 22, 1966 concluded with the following remarks of the court: "the motion for a writ of error coram nobis should be denied, and the same will be denied. And that will be the order of this court. The sheriff of this county is directed to transport the defendant back to the California Men's Colony

1964, the defendant, with counsel, entered his plea of guilty to two counts of a seven-count amended complaint which had charged him with violations of the provisions of subdivision 1 of section 261 and of sections 285, 288 and 288a of the Penal Code, in connection with acts involving his daughter. The charges of incest (Pen. Code, § 285) and rape (Pen. Code, § 261, subd. 1), to which he pleaded guilty were certified to the superior court, and the remaining counts were dismissed. A hearing was held pursuant to the provisions of section 5500 et seq. of the Welfare and Institutions Code and the court found that defendant was a mentally disordered sex offender, but that he would not benefit from treatment in a state hospital. Thereafter, on January 18, 1965 defendant was sentenced to imprisonment in the state prison.

On September 28, 1965 the defendant filed his original application for a writ of error *coram nobis*. Thereafter, the proceedings recounted in *People* v. *Vaughn* (1966) 243 Cal. App.2d 730 [52 Cal.Rptr. 690], to which reference is hereby made, ensued. By the terms of this court's remittitur the trial court was instructed "to appoint counsel and proceed with a hearing on the merits of the petition upon the issues tendered by the allegation of insanity and the induced plea of guilty."

Counsel was appointed, and filed an "Amended Petition for Issuance of Writ of Error Coram Nobis" in which defendant purported to attack the reference to "Section 261.1" of the Penal Code as a form of reference to subdivision 1 of section 261 of the Penal Code, and the sufficiency of the alleged hearing under the provisions of section 5500 et seq. of the Welfare and Institutions Code. He alleged that he did not commit the acts charged; that he was legally insane at the time of the alleged offenses and at the time his plea was entered; that his capacity to commit the offenses and to defend against the charges was impaired by the ingestion of tranquilizers, pain killing drugs, sedatives and mental depressant drugs, and by physical agony and pain; that his pleas were induced by

West at Los Padres, California. Mr. Busch, would you prepare a proper order for the court to sign." The clerk's transcript contains a formal order entitled "Order Denying Application for Writ of Coram Nobis." This order contains extensive findings and concludes: "Therefore, it is hereby ordered that the application of petitioner herein for Writ of Error Coram Nobis be denied. Dated this 22nd day of December, 1966; submitted and signed by me this 6th day of March, 1967." In the absence of a record of any other order, the formal order will be deemed to be the appealable order, and the appeal therefrom properly entertained as a premature appeal pursuant to the provisions of rule 31(a), California Rules of Court.

promises of treatment for his illness; and that the personal history on which the court acted in sentencing him was spurious. A hearing was held on the amended petition and relief was denied.

On this appeal defendant contends (1) that the lower court erred in excluding testimony of witnesses as to his innocence of the offenses charged, because the testimony was relevant to the issue of insanity; (2) that the court erred in the nature of its consideration of the evidence of the mentally disordered sex offender proceedings, because the record of the proceedings was introduced solely to show the proceedings were improperly conducted and should therefore not be accorded any weight on the merits; and (3) that the court erred in drawing a negative inference from the defendant's failure to introduce any evidence of the results of an examination by a psychologist which had been furnished at his request. As outlined below these contentions are found to be without merit, and the order must be affirmed.

*Alleged failure to admit relevant evidence*

At the time of the hearing the question of relevancy was governed by the provisions of former sections 1868 and 1870 of the Code of Civil Procedure.[2] In *Larson* v. *Solbakken* (1963) 221 Cal.App.2d 410 [34 Cal.Rptr. 450], this court observed as follows: ''The problem presented by the case at bench is one of relevancy. The meaning of relevancy is stated thusly by Witkin in his work entitled California Evidence [1958] in section 111, on page 133: ' (c) *Relevancy*. In its more precise sense, relevancy is concerned with the probative quality of the evidence offered. Relevant evidence is defined as ''evidence having any tendency in reason to prove any material fact.'' . . . [''Relevancy, as the word itself indicates, is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a proposition sought to be proved'']; . . . [''Relevancy, as

---

[2]These sections provided in pertinent part: Section 1868. ''Evidence must correspond with the substance of the material allegations, and be relevant to the question in dispute. Collateral questions must therefore be avoided. It is, however, within the discretion of the court to permit inquiry into a collateral fact, when such fact is directly connected with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness.'' (See Evid. Code, §§ 350-352.)

Section 1870. ''In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: 1. The precise fact in dispute; . . . 15. Any other facts from which the facts in issue are presumed or are logically inferable; . . .'' (See Evid. Code, § 210.)

employed by judges and lawyers, is the tendency of the evidence to establish a material proposition''] ; . . .[''Evidence is relevant not only when it tends to prove or disprove the precise fact in issue, but when it tends to establish a fact from which the existence or nonexistence of the fact in issue can be directly inferred''] ; . . .' (And see Code Civ. Proc., § 1868.) The concept of relevancy has been a subject of considerable discussion and review by legal writers and judicial decisions. From all that has been said and written, certain fundamental principles can be gleaned. These are: (1) that all relevant evidence is admissible unless some specific rule forbids or unless excluded for some special reason [citations] ; (2) that ' '' [n]o precise or universal test of relevancy is furnished by the law,'' ' but the question in each case is to be determined ' ''according to the teachings of reason and judicial experience'' ' (*Moody* v. *Peirano,* 4 Cal.App. 411, 418 [88 P. 380] ; Witkin, California Evidence, § 113, pp. 135-136) ; and (3) that a wide discretion is left to the trial judge, which discretion will not be disturbed unless there is a clear showing of abuse thereof. [Citations.]'' (221 Cal.App.2d at pp. 419-420, fns. omitted. See also *People* v. *Soto* (1966) 245 Cal.App.2d 401, 406 [53 Cal.Rptr. 832] ; and *People* v. *Lint* (1960) 182 Cal.App.2d 402, 415 [6 Cal.Rptr. 95].)

The fact that defendant was innocent, if established beyond peradventure of a doubt, would tend to show that his guilty plea was the result of an unsound mind. In *Estate of DeLaveaga* (1913) 165 Cal. 607 [133 P. 307], the court stated: ''Absolute acquiescence by the person whose soundness of mind is in question in a course of conduct on the part of those around him with relation to his property and personal affairs which no person of sound mind would tolerate or acquiesce in, is competent evidence tending to show an unsound mind.'' (165 Cal. at p. 624.)

In this case, however, the evidence offered is not necessarily inconsistent with guilt. The fact that the witnesses did not observe any abnormal conduct between defendant and his daughter, does not establish that such conduct did not occur unobserved. Nor does the proffered medical testimony require a finding of innocence. All the evidence offered was at best cumulative to defendant's own testimony.

The court had conducted the hearings which resulted in defendant's plea and sentence. It had before it the reports of examining psychiatrists and the probation officer which referred to contemporaneous declarations and admissions of the defendant. On this record it was no abuse of discretion to

exclude the cumulative and remote evidence of defendant's innocence.

*Alleged failure to evaluate the evidence in light of the purpose for which it was introduced*

Section 5505 of the Welfare and Institutions Code provides: ''Each psychiatrist so appointed shall file with the court a separate written report of the result of his examination, together with his conclusions and recommendations and his opinion as to whether or not the person would benefit by care and treatment in a state hospital. At the hearing each psychiatrist shall hear the testimony of all witnesses, and shall testify as to the result of his examination and to any other pertinent facts within his knowledge.''

The record reflects that the two written reports filed with the court, although separately subscribed, are in the first person plural, and are apparently identical in content. If the stenographer's initialing is of any significance, it indicates that Dr. Klatte adopted the wording of the report of Dr. Hook. At the hearing before the court only Dr. Hook testified, and it appears that he was excused before the defendant testified on his own behalf.

Defendant offered the record of the proceedings held to determine whether the defendant was a mentally disordered sex offender in support of his contentions that the proceedings were erroneous because the doctors failed to file separate reports, and becaues both doctors failed to hear the testimony of all witnesses and only one testified.

■ An irregularity in proceedings to determine whether a defendant is a mentally disordered sex offender may be raised by appeal. (See *People* v. *Succop* (1967) 67 Cal.2d 785, 788-790 [63 Cal.Rptr. 569, 433 P.2d 473] ; *People* v. *Austin* (1968) 260 Cal.App.2d 658, 661-663 [67 Cal.Rptr. 391] ; *People* v. *Brown* (1968) 260 Cal.App.2d 434, 439 [67 Cal. Rptr. 238] ; *People* v. *Thomas* (1968) 260 Cal.App.2d 196, 199 [67 Cal.Rptr. 234] ; *People* v. *Armstrong* (1968) 260 Cal. App.2d 190, 196 [67 Cal.Rptr. 73] ; *People* v. *Slutts* (1968) 259 Cal.App.2d 886, 894-895 [66 Cal.Rptr. 862] ; *People* v. *Gray* (1968) 259 Cal.App.2d 846, 853-854 [66 Cal.Rptr. 654] ; *People* v. *Berry* (1968) 257 Cal.App.2d 731, 736-739 [65 Cal.Rptr. 125] ; and *People* v. *Loignon* (1967) 250 Cal.App.2d 386, 389-391 [58 Cal.Rptr. 866].) ■ Where the defendant is held as a mentally disordered sex offender under an invalid commitment, he is also entitled to relief by writ of habeas

corpus. (See *People* v. *Thomas. supra,* at pp. 199-201; *In re Kramer* (1967) 257 Cal.App.2d 287, 289-290 [64 Cal.Rptr. 686]; and *People* v. *Harvath* (1967) 251 Cal.App.2d 780, 781 [60 Cal.Rptr. 15].) ▉▉▉ Defendant's contentions, however, are predicated on facts which existed at the time judgment was pronounced against him. He cannot, therefore, attack the proceedings by motion to vacate or by application for a writ of *coram nobis.* (*People* v. *Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993]; *People* v. *Silva* (1965) 232 Cal.App.2d 477, 478-479 [42 Cal.Rptr. 723]; *People* v. *Goodspeed* (1963) 223 Cal.App.2d 146, 153-156 [35 Cal.Rptr. 743]; *People* v. *Mitchell* (1954) 129 Cal.App.2d 711, 713-714 [277 P.2d 861].)

▉▉▉ Defendant further asserts that since the proceedings were irregular, the evidence produced in connection with those proceedings could not be used for any purpose (other than to show the irregularity) at the *coram nobis* hearing. It is questionable whether the proceedings were in fact irregular. In *People* v. *Succop, supra,* the court referred to the infirmities in the proceedings, as follows: "Here it appears that the court did not comply with several of the statutory requirements at the proceedings resulting in defendant's temporary commitment. Nothing in the record shows that defendant was advised of his rights to make a reply and to produce witnesses. (See Welf. & Inst. Code, § 5503.) The court-appointed psychiatrists did not testify (see Welf. & Inst. Code, §§ 5505, 5506), and defendant was not afforded any opportunity to produce evidence in his own behalf (see Welf. & Inst. Code, §§ 5503, 5508). The parties did not stipulate that the question be submitted on the reports of the court-appointed psychia-

---

³In this case the mentally disordered sex offender proceedings were summarily terminated at the initial hearing and the defendant was remanded to the court sitting in the criminal proceedings, pursuant to the provisions of the second paragraph of section 5511.7 of the Welfare and Institutions Code. He is presently confined under the sentence of the latter court. He had a right to have the propriety of the finding that he was a mentally disordered sex offender who would not benefit by care and treatment in a state hospital reviewed on appeal. (*People* v. *Succop* (1967) 67 Cal.2d 785, 790 [63 Cal.Rptr. 569, 433 P.2d 473]; *People* v. *Austin* (1968) Cal.App.2d 658, 662 [67 Cal.Rptr. 391]; *People* v. *Slutts* (1968) 259 Cal.App.2d 886, 895 [66 Cal.Rptr. 862]; *People* v. *Gray* (1968) 259 Cal.App.2d 846, 853-854 [66 Cal.Rptr. 654].) Since his commitment stems from the criminal proceedings and is not under the special proceedings, he may not be in a position to attack the latter by habeas corpus. In any event, the petition shows that defendant is confined in San Luis Obispo County, outside the jurisdiction of this court, and these proceedings may not, therefore, be considered as an application for a writ of habeas corpus by this court.

trists and instead defendant made it clear that he desired a hearing. The procedure here followed did not satisfy due process. (Cf. *Specht* v. *Patterson,* 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209].)'' (67 Cal.2d at p. 789. See also *People* v. *Austin, supra,* 260 Cal.App.2d 658, 662-663; *People* v. *Brown supra,* 260 Cal.App.2d 434, 439; *People* v. *Thomas, supra,* 260 Cal.App.2d 196, 201; *People* v. *Slutts, supra,* 259 Cal. App.2d 866, 894; *People* v. *Gray, supra,* 259 Cal.App.2d 846, 853; *People* v. *Berry, supra,* 257 Cal.App.2d 731, 737; *In re Kramer, supra,* 257 Cal.App.2d 287, 289; *People* v. *Harvath, supra,* 251 Cal.App.2d 780, 782 and 783; *People* v. *Loignon, supra,* 250 Cal.App.2d 386, 389-390.)

In this case the defendant entered his guilty pleas to two counts before the magistrate and the matter was certified to the superior court. There is no record of his original arraignment before the court in the criminal matter, but the clerk's transcript reflects that a certification was made for hearing and examination, presumably as required by subdivision (c) of section 5501 of the Welfare and Institutions Code, the victim being allegedly under 14 years of age. The defendant, in the presence of counsel, was apprised of the certification and ''of his rights to make a reply and to produce witnesses in relation thereto'' as required by section 5503. Two psychiatrists were appointed, as required by section 5504, and the court designated a time and place for the hearing and examination and ordered a copy of the order so providing to be served on the defendant, all as required by section 5503. A probation report was prepared and filed as directed by section 5503.5.

Each of the psychiatrists examined the defendant and filed a separate report, as required by section 5505. There is nothing in the statute to prohibit the joint examination of a defendant such as was conducted in this case. The fact that the reports contained identical verbiage does not preclude compliance with the law. The sources of the data—the probation report, the records of the clinic at the state hospital, and the defendant's statements—were the same for each physician. There is nothing untoward in condensing that data in the same language. The same considerations apply to the diagnoses and conclusions. If the doctors in fact agreed, nothing was to be gained by using different phraseology to arrive at the same result. If the form of the report raises a suspicion as to the validity of the diagnosis of either doctor, pursuit of

that defect was waived by failure to examine both in open court.

In this case one doctor testified and the defendant waived his right to have the second doctor present in court. At the opening of the hearing it was revealed that one doctor would not be able to attend that day. The court pointed out that the defendant would be entitled to a continuance if he desired the other doctor, and the defendant's counsel replied, "I don't want to make a motion for continuance now, your Honor. At this time I would agree to go ahead and take the testimony of Dr. Hook." At the conclusion of the first doctor's testimony, the court again indicated that it would continue the matter for the purpose of securing the attendance of the second doctor. Defendant's counsel indicated that no purpose would be served as the testimony would be more or less cumulative. The defendant was then examined, and at the conclusion of his testimony, his counsel stated that there were no more witnesses, "just argument." ■ As indicated in the foregoing quotation from *Succop*, the right to have the examining physician testify may be waived (*People* v. *Armstrong, supra,* 260 Cal.App.2d 190, 192; *People* v. *Berry, supra,* 257 Cal.App.2d 731, 737-738. See also *People* v. *Thomas, supra,* 260 Cal.App.2d 196, 201; and *In re Cruz* (1965) 62 Cal.2d 307, 312-313 [42 Cal.Rptr. 220, 398 P.2d 412]. Cf. *People* v. *Whelchel* (1967) 255 Cal.App.2d 455, 458-459 [63 Cal.Rptr. 258]; and *People* v. *Davis* (1965) 234 Cal.App.2d 847, 849-852 [44 Cal.Rptr. 825].)

■ It is true that the record fails to reveal that the one doctor present heard and was given an opportunity to comment on the testimony of the defendant. Before excusing the doctor, the court stated, "I understand that Dr. Hook may be excused then, gentlemen. You don't want to call him again?" Defendant interposed no objection then, nor did he suggest at the conclusion of his testimony, that either doctor should be requested to reappraise his conclusion on the basis of defendant's testimony. It has not been suggested that the testimony of the defendant interjected factors which he had not disclosed to the examining physicians when they conducted their examination. Under these circumstances, the failure to fully comply with the terms of the statute does not render the proceeding fatally defective because such literal compliance was a condition precedent to the exercise of jurisdiction by the court conducting the special hearing, or because it denied the defendant procedural due process. (See *People*

v. *Murphy* (1968) *(Cal.App.) 67 Cal.Rptr. 164.)

 Even if the report of the nontestifying doctor and the testimony of the other were rendered nugatory in the special proceedings because of procedural defects, they were still in the record of the case. The transcript of the *coram nobis* proceedings reflects that they were property considered in these proceedings with the acquiescence of the defendant. The record of the doctor's testimony and the remaining proceedings under the provisions of the Welfare and Institutions Code were received, over the objection of the prosecutor, pursuant to the defendant's offer of that record to show the irregularity of the special proceedings. At the conclusion of the defendant's presentation the prosecutor offered the report of the nontestifying doctor with the representation that the defendant had stipulated to its introduction. Defendant's counsel replied, ''I am willing to enter into the stipulation providing that the testimony of Dr. Hook might also be considered by the court, both his direct and his cross, his redirect and his recross. And since that is now in the record as a result of our previous offer in evidence and that does occur within the pages of the reporter's transcript which the court has previously received in evidence, we would enter into the stipulation.'' Defendant subsequently offered, and the court received in evidence the probation report originally prepared for the psychiatrists. It is obvious that both parties considered these matters in evidence on all of the issues before the court in the *coram nobis* proceedings. The prosecutor, without objection, alluded to the prior testimony of the doctor and to the content of the other doctor's report in arguing that the defendant was sane at the time of the proceedings leading to his conviction and sentence.

No error is found in the admission or evaluation of the evidence from the prior proceedings.

*Alleged improper inference from*
*failure to produce evidence*

 In rendering its decision the court made the following remarks: ''I think that the court can also take notice of the fact that there is in the file certain orders made by this court previous to this hearing at the request of the defendant for certain records of the California Men's Colony, West Facility, Los Padres, and for an order of transportation of the defendant to Mendocino State Hospital at Talmage for

---

*A hearing in *People* v. *Murphy* was granted by the Supreme Court on June 19, 1968. For the opinion of the Supreme Court filed January 14, 1969, see 70 Cal.2d —— [74 Cal.Rptr. 65, 448 P.2d 945].

54

interview and testing by a clinical psychologist, and that there are no records introduced in evidence of the facility at Los Padres, nor was Dr. Handrich called to testify, nor were there any reports read to the court by way of stipulation or otherwise as to his findings. While that of course is not evidence, yet I certainly can assume that had there been evidence to indicate that there was insanity, or even a condition bordering on insanity at the time of trial, that such evidence would have been presented. I feel that the court must under the circumstances, and because of the burden placed upon the defendant to overcome the correctness of the judgment by clear and convincing proof and strong evidence, that there has been a failure to overcome that presumption and that the motion for a writ of error *coram nobis* should be denied, and the same will be denied.''

Defendant acknowledges that the principle, which permits an unfavorable inference to be drawn from the failure to produce evidence which the record shows to exist, has been applied in criminal proceedings. (See Code Civ. Proc., former § 1963, subds. 5 and 6; former § 2061, subds. 6 and 7; Evid. Code, §§ 412 and 413; *People* v. *Crowder* (1954) 126 Cal.App. 2d 578, 583 [272 P.2d 775]; and *People* v. *Beal* (1953) 116 Cal.App.2d 475, 479 [254 P.2d 100].) He contends that the rule only may be applied as it was in the cited cases, for the benefit of the defendant.

It is unnecessary to determine to what extent such an inference may be raised against the defendant on the issue of guilt. ▆▆▆ No reference may be made to the failure of the defendant himself to deny or explain the evidence against him. (*Griffin* v. *California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229]; *People* v. *Bostick* (1965) 62 Cal.2d 820, 823 [44 Cal.Rptr. 649, 402 P.2d 529].) Nevertheless, the prohibition against comment does not preclude indulging in the logical inference that an issue should be determined in accordance with the evidence produced when that evidence stands uncontradicted and unexplained. (See *People* v. *Beghtel* (1966) 239 Cal.App.2d 692, 694-696 [49 Cal.Rptr. 235].) *Griffin* does not necessarily cover the situation where the evidence properly produced reveals the existence of further evidence, other than the testimony of the defendant himself, which might logically be produced in explanation or contradiction of that adduced against him.

▆▆▆ In this case the issue raised by the petition is not guilt but sanity—sanity at the time of the commission of the

offense, and sanity at the time of the proceedings leading to his conviction and sentence. Although the tests to determine capacity are different (*cf.* Pen. Code, §§ 21 and 26; and *People* v. *Wolff* (1964) 61 Cal.2d 795, 799-803 [40 Cal.Rptr. 271, 394 P.2d 959], with Pen. Code, § 1367; *People* v. *Laudermilk* (1967) 67 Cal.2d 272, 282-283 [61 Cal.Rptr. 644, 431 P.2d 228]; and *In re Dennis* (1959) 51 Cal.2d 666, 674 [335 P.2d 657]), the burden of proof is on the defendant to establish his insanity on each of these issues. (See Pen. Code, § 1026; *People* v. *Wolff, supra,* at pp. 817-818; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 898-901 [256 P.2d 911]; Pen. Code, §§ 1368 and 1369; *In re Dennis, supra,* at p. 673; and see Evid. Code, § 522; and *cf.* §§ 500 and 501.) In the absence of any evidence of insanity the trier of fact must resolve the issue by finding the defendant sane. ▮▮▮ It is generally recognized that the failure of a party to produce the results of an admitted physical examination which are available to him may give rise to an adverse inference concerning the results of that examination. In *Hays* v. *Viscome* (1953) 122 Cal.App.2d 135 [264 P.2d 173, 139 A.L.R.2d 1435], the rule is stated as follows: ". . . where a party has an opportunity to call a witness who is prepared and qualified to testify as to a fact in issue and fails to do so, it may be inferred by the trier of fact that the evidence if given would be adverse to such party." (122 Cal.App.2d at p. 138. See also *People* v. *Beal, supra,* 116 Cal.App.2d 475, 479.) ▮▮▮ There is no policy against applying this rule to the issues involved in this proceeding.

▮▮▮ Defendant recognizes that any privilege, under the principle now set forth in section 1017 of the Evidence Code, which might prohibit the use of the findings of the psychologist who was appointed by order of the court at the request of the defendant's attorney, was lost when defendant tendered the issue of his sanity. (See Evid. Code, §§ 1016 and 1023.) He urges that since there was no such privilege, the prosecution had the right to call the psychologist as a witness when he failed to do so. This contention overlooks the fact that defendant had the burden of proof on the issue of his sanity, and fails to consider that the psychologist's report, unlike the reports of psychiatrists appointed pursuant to the provisions of Penal Code section 1027, would not necessarily be available to the prosecution. ▮▮▮ The institutional records, however, were equally available to both sides, and the court may have erred in drawing any inference as to their content. In view of

the other evidence in the record, the error, if any, could not have been prejudicial.

▋ No error can be predicated upon the remarks of the court which defendant has attacked.

The order denying defendant's application for writ of *coram nobis* is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 3, 1968. Sullivan, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.