[Civ. No. 25142.   Second Dist., Div. One.   Aug. 28, 1961.]

Estate of JOHN N. OCKERLANDER, Deceased.   ALICE OCKERLANDER, Appellant, v. Estate of JOHN N. OCKERLANDER et al., Respondents.

Guerin & Guerin and John J. Guerin for Appellant.

Herschel E. Champlin for Respondents.

FOURT, J.—This is an appeal from an order settling the first and final account of a former administratrix and overruling objections to said account.

John N. Ockerlander, before his death, apparently was a retired army officer (major) residing in Los Angeles County. He was married to Alice Ockerlander and a child, Joanna Ockerlander, was born as the issue of such marriage. John secured a final decree of divorce from his wife on or about January 17, 1958. She apparently at times resided out of the State of California in later years. He had three sisters, two

of whom lived in Wisconsin and one who lived in Vermont. The daughter resided in California and at the time of John's death she was 13 years of age. The only other relative of John residing in California was Elsie F. Waterman (an aunt) who was a personal accountant for Lucille Ball and Desi Arnaz at Desilu Productions Studios in Hollywood and for seven years had charge of their personal financial affairs as accountant. She also had some experience as an administratrix in other estates.

John became mentally ill and a proceeding was instituted in March 1959 in the Superior Court of Los Angeles County to have him legally declared to be mentally ill. That case was heard in April 1959 and John was committed to the custody of the Counselor in Mental Health for placement in his (John's) home (a rented apartment upon a month-to-month basis) in Santa Monica, under the control of Harold E. Champlin, attorney at law, for the period April 2, 1959, to June 2, 1959. Champlin had known John for quite some time and was a friend and John's attorney.

Elsie Waterman made several telephone calls to John's sisters during his mental illness to the end that they were kept informed and advised of his condition and status. John Ockerlander died intestate on April 19, 1959. The sisters were telephoned with reference to his death and they all came to Los Angeles for the funeral.

The sisters selected the cemetery plot for his burial and made all of the arrangements for the funeral with the mortuary. John was buried near Miss Waterman's mother of whom he was very fond before she died on February 16, 1959. The cemetery plot cost $250. The deed thereto was in the name of the sisters; however, no right in the property was transferred to the grantees, other than a right of interment and John, as heretofore indicated, was buried in the plot.

The sisters were in John's apartment following his death and did some packing and perhaps took some eight or ten old phonograph records which they had previously given him. Miss Waterman was appointed special administratrix on April 24, 1959, pursuant to a petition and the nomination of all three of John's sisters. On June 10, 1959, she was appointed administratrix with general powers. She found no papers of any consequence at the apartment as John apparently had destroyed everything of such character. There were some used kitchen utensils of no value. John also possessed 15 shares of United States Steel Corporation stock, a radio-record player,

a television set, an automobile, some small tools and a set of books (encyclopedia).

On May 21, 1959, the minor daughter, Joanna, filed a request for special notice on all petitions and accounts through her attorneys. On December 11, 1959, through her attorneys, she filed a withdrawal and waiver of the request for special notice. Alice Ockerlander, the former wife, apparently was in California during or a part of May 1959 and returned to Virginia on or about June 1, 1959, without having a guardian of the estate of Joanna appointed in the State of California.

On December 22, 1959, the former wife was appointed the guardian of the person and estate of Joanna and on that date filed a petition for letters of administration and for a revocation of the letters previously granted to Miss Waterman. On February 16, 1960, the former wife was appointed the administratrix.

On January 28, 1960, the first and final account of Miss Waterman was filed by which she accounted for the property of the estate which had come into her possession. On February 16, 1960, the former wife filed objections to the account. A hearing was held on March 4th to 7th, 1960 before a judge experienced in probate matters. An order was made May 2, 1960, which in effect overruled all of the objections with the exception of certain requests for commissions and attorney's fees which were continued over until such time as the estate proceedings were to be concluded. On the same date the former wife filed objections to the proposed order upon the grounds that the evidence would not support any such orders and that there was an abuse of discretion as to the allowance of certain credits. The appeal was then taken from such order.

The appellant asserts that the court erred: (1) in impliedly holding that some personal effects might be disregarded by the administratrix simply because such effects had no monetary value (apparently she had reference to some pots and pans and kitchen utensils and the phonograph records); (2) in not surcharging the administratrix with reference to the sale of the automobile; (3) in not surcharging for the United States Steel Corporation stock sale; (4) in not surcharging for the telephone calls (to the sisters of deceased wherein they were informed of the condition, status and death of their brother); (5) in not surcharging for the expense paid to the attorney of deceased as his attorney and for his custodial care following his commitment; (6) in not surcharging for the sum expended in securing the funeral plot (the former

wife contends in effect that since $150 plots were available that was good enough for her former husband) ; (7) in not surcharging for the alleged high funeral expense (she contends in effect that her former husband was entitled to a decent burial but not one as good as he got) ; (8) in failing to compel the administratrix to prove her account, although the account was verified; (9) in not surcharging the administratrix with the loss in the sale of a second-hand set of books (an out-dated encyclopedia) appraised at $25 and sold for $5.00) ; (10) in not surcharging for the old utensils given away; and (11) in not surcharging for the value of a table model radio.

Many times the rule has been spelled out with reference to the position of this court in a situation such as is here presented.

■ In *Brown* v. *Newby*, 39 Cal.App.2d 615, 618 [103 P.2d 1018], it is stated:

''. . . An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice; without indulging in further detail, the record reveals appellants' showing to be insufficient in this regard. (See 2 Cal.Jur., p. 896, et seq.) '' (See also *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689] ; *Estate of Teel*, 25 Cal.2d 520, 526 [154 P.2d 384] ; *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].)

Without setting forth the testimony in detail, suffice it to say that there was substantial evidence introduced upon every phase of appellant's complaints or objections and the judge was well within bounds in finding as he did find.

■ The funeral and last illness expenses are a proper charge against the estate of a decedent. (*Estate of Kemmerrer*, 114 Cal.App.2d 810 [251 P.2d 345, 35 A.L.R.2d 1393] ; Health & Saf. Code, § 7101, Prob. Code, § 950.)

The testimony with reference to the sale of the automobile was clear and convincing to the effect that the administratrix had conducted a proper sale of the same. The sale of the United States Steel Corporation stock was for more than its appraised value, and incidentally for more than it was listed on the stock exchange at the time of the sale.

It appears in fact that the former wife permitted Miss Waterman to be appointed in the first instance and thereafter stood by while Miss Waterman did all of the work with reference to the estate. Then some 10 months later she, the former wife, came back to California, got herself appointed as the guardian of the estate of her daughter and then filed the petition to have Miss Waterman removed. Petitioner objected therein to everything which had been done and accomplished by Miss Waterman, even to the extent of the circumstances of the burial which was arranged by his sisters. She also complained concerning those matters wherein the estate particularly benefited, i.e., the sale of the United States Steel Corporation stock.

We find from a reading of the entire record that there was no substantial error and, if any error, it was not prejudicial.

The order appealed from is affirmed.

Wood, P. J., and Lillie, J., concurred.