[Crim. No. 7577. First Dist., Div. One. May 20, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIE LEE HAM, Defendant and Appellant.

## COUNSEL

Leonard Luther Nolting, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a denial of his motion for a new trial[1] and from a judgment entered pursuant to a jury verdict convicting defendant of armed robbery and assault with a deadly weapon. He makes several contentions. We shall separately discuss each contention and the facts pertinent thereto.

### Double Jeopardy

Pursuant to an amended indictment defendant was charged with armed robbery (violation of Pen. Code, § 211)[2] in count one, assault with a deadly weapon (violation of § 245, subd. (b)) in count two, and with attempted murder (violation of §§ 667 and 187) in count three. A jury trial commenced on June 24, 1968 in which the trial court determined that the jurors were unable to agree upon a verdict. The jury was discharged and the cause was reset for trial. Prior to the commencement of the second trial defendant moved to dismiss counts two and three on the grounds of former jeopardy. The motion was denied. The jury, in the second trial, found defendant guilty of counts one and two and not guilty of count three.

Defendant argues that his retrial was violative of his rights against double

---

[1]An order denying a motion for a new trial is not appealable but it may be reviewed upon appeal from a final judgment. (Pen. Code, § 1237.)

[2]Unless otherwise indicated, all statutory references are to the Penal Code.

jeopardy[3] in that the trial court erred in prematurely discharging the jury in the first trial because of deadlock in that the court failed to sufficiently determine that resolution was not possible or to encourage the jurors to resolve their differences. He argues that the discharge was tantamount to an acquittal and that his subsequent trial therefore placed him in double jeopardy. In the alternative, defendant argues that since the first jury did not deliberate on counts two and three, the discharge was an implied acquittal as to those counts, and, therefore, he was subjected to double jeopardy as to those counts. In this regard he relies on the statement by the jury foreman that the jury had deliberated on and considered only count one.

In considering these contentions we observe, initially, that we are concerned with double jeopardy in regard to the second count only. The record discloses that defendant's plea of double jeopardy was entered only as to counts two and three. ■ Accordingly, the failure to enter a plea as to count one in the court below constitutes a waiver thereof. (*People* v. *Venturi,* 196 Cal.App.2d 244, 245 [16 Cal.Rptr. 505]; *People* v. *Foster,* 199 Cal. App.2d 866, 873-875 [19 Cal.Rptr. 283]; *People* v. *Gomez,* 229 Cal.App. 2d 781, 784 [40 Cal.Rptr. 616].) ■ As regards count three, any consideration of the plea of double jeopardy as to this count has been rendered moot by virtue of the fact that defendant was found not guilty as to this count. ■ An appellate court will not review error unless it is prejudicial, i.e., it must be error that substantially affects the rights and obligations of the appellant and therefore results in a miscarriage of justice. (Code Civ. Proc., § 475; *Kyne* v. *Eustice,* 215 Cal.App.2d 627, 635 [30 Cal.Rptr. 391]; *People* v. *Ghione,* 115 Cal.App.2d 252, 254 [251 P.2d 997].)

■ Directing our attention to count two, we observe that "jeopardy attaches to a defendant when he is placed on trial before a court of competent jurisdiction upon a valid indictment or information before a jury duly impaneled and charged with his deliverance." (*Jackson* v. *Superior Court,* 10 Cal.2d 350, 352 [74 P.2d 243, 113 A.L.R. 1422]; *Paulson* v. *Superior Court,* 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641].) ■ If a jury is discharged without first having rendered a verdict, a defendant cannot be retried and placed in jeopardy unless the jury's discharge was consented to or there was legal necessity to discharge the jury. (*Cardenas* v. *Superior*

[3]The Fifth Amendment to the United States Constitution provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . ." This is applicable to the states through the Fourteenth Amendment due process clause. (*Benton* v. *Maryland,* 395 U.S. 784 [23 L.Ed.2d 707, 89 S.Ct. 2056], overruling *Palko* v. *Connecticut,* 302 U.S. 319 [82 L.Ed. 288, 58 S.Ct. 149].)

Article I, section 13 of the California Constitution provides that in criminal cases "No person shall be twice put in jeopardy for the same offense; . . ."

Section 1023, in pertinent part, provides: "When the defendant . . . has been once placed in jeopardy upon an accusatory pleading, the . . . jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, . . ."

*Court,* 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R. 2d 371]; *Paulson* v. *Superior Court, supra.*)

In the present case there was no consent by defendant to the discharge. Hence our inquiry is whether there was a legal necessity for the discharge.

■ Such a legal necessity exists if, at the conclusion of such time as the court deems proper, it satisfactorily appears to the court that there is no reasonable probability that the jury can resolve its differences and render a verdict. Under these circumstances the court may properly discharge the jury and reset for trial. (§ 1140[4]; *People* v. *Griffin,* 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507]; *Paulson* v. *Superior Court, supra,* 58 Cal.2d 1, 5.) ■ This determination, in each instance, rests in the sound discretion of the trial judge, exercisable on reference to and consideration of all the factors before him (*Paulson* v. *Superior Court, supra,* at p. 6; *People* v. *Huff,* 255 Cal.App.2d 443, 447 [63 Cal.Rptr. 317]; *People* v. *Caradine,* 235 Cal.App.2d 45, 47 [44 Cal.Rptr. 875]; *People* v. *Carter,* 68 Cal.2d 810, 815 [69 Cal.Rptr. 297, 442 P.2d 353]), and will not be disturbed on appeal unless there is a strong showing of a manifest miscarriage of justice and no possibility for different opinions on the facts. (*Brown* v. *Newby,* 39 Cal.App.2d 615, 618 [103 P.2d 1018]; *Estate of Ockerlander,* 195 Cal.App.2d 185, 188 [15 Cal.Rptr. 404]; *Waller* v. *Brooks,* 267 Cal. App.2d 389, 394 [72 Cal.Rptr. 228].)

Adverting to the instant case in the light of these principles we observe the following facts attendant on the discharge of the jury at the first trial. After the deliberation the court asked the jury if it had reached a verdict. The foreman replied "Your Honor, we have not," and indicated a deadlock on each of four ballots. The court then asked the foreman if he felt the jury could reach a verdict if they deliberated longer. The foreman stated he did not believe a verdict could be reached. The court then asked the jury as a whole if this was their opinion. Only one juror responded orally to this inquiry with the statement "Without more evidence." The court then announced that "Jurors being unable to reach a verdict, the matter will be reset for trial on July 8th at 10:00 A.M." The court then discharged the jury "from further attendance upon the Court" and remanded defendant to the custody of the sheriff. However, before the jury left the jury box the court made some observations to the jury concerning the jury system and then made the following inquiry: "Do I gather that those votes were in respect to each form of verdict?" The foreman responded: "Your honor, we took up the first indictment only. . . . We were working on that

---

[4]Section 1140 provides: "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

one and taking four ballots on that one." The court then asked "The robbery charge?" and the foreman responded "Yes." The trial judge then excused the jury.

From the foregoing it appears that at the time the trial judge first ordered that the jury be discharged he was under the impression that the jury was unable to agree on any of the three counts. However, *while the jury was still in the box* the judge learned that the jury had deliberated only as to count one and that it had not deliberated at all on counts two and three. Under these circumstances the trial judge was empowered to send the jury back to deliberate on these counts notwithstanding that he had declared his intention to discharge them. (See *People* v. *Powell,* 99 Cal.App.2d 178, 180-182 [221 P.2d 117].) Not only was he justified in doing so, but it was his duty to do so. Section 1160 provides, in pertinent part, that "Where two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." This section takes cognizance of the principle that each count in an accusatory pleading which charges a separate and distinct offense must stand on its own merit and the disposition of one count has no effect or bearing on the other counts in the accusation. (§ 954; *People* v. *Carothers,* 77 Cal.App.2d 252, 254 [175 P.2d 30]; *People* v. *Hernandez,* 242 Cal.App.2d 351, 358 [51 Cal.Rptr. 385]; *People* v. *Villa,* 156 Cal.App.2d 128, 133 [318 P.2d 828]; *People* v. *Tideman,* 57 Cal.2d 574, 585 [21 Cal.Rptr. 207, 370 P.2d 1007].)

Accordingly, since each count was entitled to be severally and finally disposed of on its own merits, the fact that the jury was unable to agree upon a verdict as to count one and the trial judge was justified in declaring a mistrial as to that count because legal necessity required it, did not affect counts two and three upon which the jury had not yet deliberated. Therefore, when the jury in the present case was discharged without returning a verdict as to counts two and three, or without any legal necessity for such discharge, jeopardy attached to defendant as to counts two and three. (See *Paulson* v. *Superior Court, supra,* 58 Cal.2d 1, 5.) Such discharge was equivalent to a verdict of acquittal as to those counts. (*Jackson* v. *Superior Court, supra,* 10 Cal.2d 350, 356; *Paulson* v. *Superior Court, supra.*)

By reason of the acquittal as to counts two and three resulting from the discharge of the jury, only count one remained in the accusation. Since a plea of once in jeopardy was not interposed as to count one, we need not determine whether the trial court abused its discretion in determining

that there was no reasonable probability that the jury could agree upon a verdict as to this count.

## Self-Incrimination

Defendant argues that the court's failure to give an instruction admonishing the jury to draw no unfavorable inferences from defendant's failure to testify was violative of his protection against self-incrimination under the Fifth Amendment. We note, initially, that the record fails to show affirmatively that defendant requested such an instruction.[5] The record discloses only a declaration in support of defendant's motion for a new trial that such a request was made in chambers, and a counteraffidavit by the prosecutor that no such request was made. In denying the motion for new trial the court apparently resolved this conflict in favor of the prosecution in the light of its own recollection in the matter. We are, therefore, bound by the trial court's determination of this factual conflict. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *Lundblade* v. *Phoenix,* 213 Cal.App.2d 108, 110-111 [28 Cal.Rptr. 660]; *DeWit* v. *Glazier,* 149 Cal.App.2d 75, 81-82 [307 P.2d 1031].) ▮ Accordingly, since an appellate court cannot properly consider matters not of record, we will disregard assertions of fact in an appeal brief which are not of record. (*Hom* v. *Clark,* 221 Cal.App.2d 622, 647 [35 Cal.Rptr. 11]; *Loving & Evans* v. *Blick,* 33 Cal.2d 603, 613-615 [204 P.2d 23].)[6] It should also be noted here that defendant interposed no objection to the court's failure to give the subject instruction. Under the circumstances where a defendant remains silent while the court does or allows an unauthorized act, there is authority to the effect that he waives the right of reversal by reason thereof. (*People* v. *Lloyd,* 98 Cal.App.2d 305, 313 [220 P.2d 10]; *People* v. *Escobar,* 122 Cal.App.2d 15, 21 [264 P.2d 571].)

▮ Our consideration turns to whether, in any event, it was error for the trial court not to have given the instruction *sua sponte.* We conclude that it was not on the basis of authority which holds that it is not error to fail to give such an instruction *sua sponte.* (*People* v. *Horrigan,* 253 Cal.App.2d 519, 521-523 [61 Cal.Rptr. 403]; *People* v. *Duran,* 275

---

[5]Defendant alleges that he requested an instruction in the form of CALJIC No. 51 (CALJIC Rev. ed. 1955) which in substance provides that it is a constitutional right of a defendant that he may not be compelled to testify and that no inference of guilt or adverse inference may be drawn from the fact that he did not testify.

[6]We are not unaware in reaching this conclusion, however, of the decisional authority holding that refusal to give a limiting instruction as to unfavorable inference from a defendant's failure to testify can constitute prejudicial and reversible error. (*People* v. *Smith,* 265 Cal.App.2d 775, 779-780 [71 Cal.Rptr. 557]; *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 114]; *People* v. *Modesto,* 66 Cal.2d 695, 713 [59 Cal.Rptr. 124, 427 P.2d 788].)

Cal.App.2d 35, 37 [79 Cal.Rptr. 666].) We are impressed by the rationale in *Horrigan* to the effect that the giving of such instruction *sua sponte* points up to the jury the absence of a prime witness from the stand and that to focus upon this situation "is a constitutionally proportioned invasion of and a violation of the rights of defendant." (P. 522.)

We turn then to the claim of self-incrimination predicated upon a ruling of the court with respect to the admission of certain testimony by Federal Bureau of Investigation Agent Cates. Cates testified that an abandoned 1966 light-colored Chevrolet located by him in a Sacramento parking lot was registered to defendant. Defendant's counsel objected to such statement upon the basis that there was an absence of a proper foundation. The court overruled the objection, stating that, in view of the presumption from the registration, defendant was in the best position to explain whether the car belonged to him. Defendant urges that this statement by the court suggested to the jury that defendant had the burden of proof as to his innocence and was therefore violative of his right against self-incrimination.

Before proceeding to discuss the applicable principles, we deem it proper to set out certain facts which indicate the significance of Cates' testimony. William A. Groth, the robbery victim, testified that after the robbery he observed one of the robbers jump into a tan-colored car with black and white license plates and speed away. Officer Maitoza, who arrived at the robbery scene while the robbery was in progress, identified the "getaway" car as "a light colored Chevy with black and white license plates." Two other witnesses identified the car being pursued by a police vehicle as a "light-colored Chevy."

Ray R. Lenz, defendant's father-in-law, testified that he, defendant and defendant's wife had come to California from Texas. He said that defendant had come in a light-colored Chevy, which Chevy had black and white Texas 1966 license plates. Lenz said that defendant and his brother had left the trailer in Watsonville at approximately 6 p.m. March 15, 1967, and drove away in defendant's car. Defendant returned about 10 p.m., and his brother returned at about 3:30 a.m. the next morning. The robbery occurred on the night of March 15, 1967 while Groth was locking up the liquor store at which he was employed as a clerk. Cates, following the overruling of the subject objection, testified that when he examined the vehicle he discovered therein some .22 caliber hollow point bullets, small gun cleaning brushes and some jump wires.

Directing our attention to the applicable principles, we observe that *Griffin v. California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], clearly

holds that the Fifth Amendment bars comment by prosecutors and judges on a defendant's failure to testify, a right accorded him by that amendment. (Pp. 613-614 [14 L.Ed.2d pp. 109, 110].) The vice of such comment is that it solemnizes the silence of the accused into evidence against him. (*Griffin* v. *California, supra,* at p. 614 [14 L.Ed.2d at p. 109].) In the present case, by reason of the court's comment, the jury could infer that the abandoned automobile was defendant's because otherwise defendant would have taken the stand and denied it. Such inference was the very thing *Griffin* sought to prevent. Accordingly, we conclude that the comment by the court violated defendant's rights against self-incrimination.

The People's reliance on *People* v. *Vaughn,* 262 Cal.App.2d 42 [68 Cal.Rptr. 366] is misplaced. That case did not involve a comment by the court in a jury trial on the defendant's failure to testify; rather it was a *coram nobis* proceeding in which the court in rendering its decision drew an unfavorable inference from the failure to produce evidence which the record showed to have existed. (Pp. 53-54.) In *Vaughn* we reaffirmed the *Griffin* principle that no reference may be made to the failure of the defendant to deny or explain the evidence against him, but we held that such prohibition does not preclude the trier of fact from indulging in the logical inference that an issue should be determined in accordance with the evidence produced when that evidence stands uncontradicted and unexplained. (P. 54.) In the instant case the court's comment was in effect a direct reflection on defendant's failure to testify, that is, to explain the possession of the car.

### Illustrative Evidence

During the trial the prosecutor showed a .22 caliber pistol to three witnesses to ascertain if the weapon used by the robber was similar in appearance. Defendant objected each time to the showing of the weapon on the grounds that it was irrelevant and prejudicial. The trial court sustained the objection when the gun was shown to Groth, overruled the objection when the gun was shown to defendant's wife, and sustained the objection when the gun was shown to Judy Simmons, the aunt of defendant's wife. Defendant now urges that the showing of the gun was highly prejudicial and deprived defendant of a fair trial.

Considering the relevant facts, we observe that Groth testified that the two robbers each had identical guns; that they were "either .22 or .25 small caliber"; and that the barrel was about four inches long. When shown a .22 caliber gun while on the witness stand Groth testified that it was similar to the gun he had described, "except the barrel was a little longer, I think." Although the court subsequently sustained an objection

to admitting the gun in evidence, the latter testimony was not stricken. Kittie Ham, defendant's wife, testified that her husband and his brother each owned a gun, which she described as "small ones." When shown the .22 caliber pistol in question she testified that it was similar to the guns owned by her husband and his brother. Judy Simmons testified that she had seen defendant with a gun, and when asked if it was similar to the gun shown to her by the prosecutor, was not permitted to answer in view of the objection sustained by the court. In each instance the prosecutor made known to the court that his purpose was to have the witness testify whether the subject gun was similar to the gun which the witness saw in the possession of defendant.

■ It is well settled that demonstrative evidence is admissible for the purpose of illustrating and clarifying a witness' testimony. (*People* v. *Kynette,* 15 Cal.2d 731, 755 [104 P.2d 794]; *St. George* v. *Superior Court,* 93 Cal.App.2d 815, 816 [209 P.2d 823]; see Witkin, Cal. Evidence (2d ed. 1966) § 642, p. 604.) ■ Accordingly, a pistol, under proper circumstances, can be admitted in evidence for the limited purpose of illustration. (*People* v. *Vaiza,* 244 Cal.App.2d 121, 126 [52 Cal.Rptr. 733].) In presenting a pistol for illustrative purposes a proper foundation must be laid. In laying such foundation it is paramount that it be established that the pistol was substantially similar to that which it seeks to illustrate. (See *People* v. *Vaiza, supra.*) Here it was testified to by Groth that a .22 or .25 small caliber pistol was used in the robbery and when he identified the gun in question as substantially similar he was conceptualizing and illustrating his testimonial description of defendant's weapon.

With respect to Mrs. Ham, her testimony that her husband owned a gun was admissible providing it was a gun which could have been used in the commission of the crime. (*People* v. *Richardson,* 74 Cal.App.2d 528, 540-541 [169 P.2d 44]; see *People* v. *Riser,* 47 Cal.2d 566, 577 [305 P.2d 1].) Moreover, her testimony in that regard was not objected to. ■ Accordingly, since the weapon was specifically identified by Groth and Mrs. Ham testified that her husband owned a gun which she identified as a "small one," it was proper to illustrate her testimony by showing her the gun in question which Groth testified was similar to the one which had been used on the night of the robbery. The trial court erred in sustaining defendant's objection in these instances, although, with respect to Judy Simmons, its ruling was correct because a proper foundation was not laid. Since the prosecution was justified in showing the subject weapon to Groth and Mrs. Ham, defendant cannot complain of prejudice when the court erroneously ruled in his favor. In any event, since there was testimony in the record that defendant had used a gun in the robbery, we fail to see how the gun could have influenced the jury to the prejudice of defendant.

*Interrogation by Court*

 Defendant's wife, who was called as a witness by the prosecution, testified on cross-examination that her aunt, Judy Simmons, had told her that two men had robbed Bill's Liquor Store. Defense counsel then asked Mrs. Ham if she told anybody about this information and inquired whether her aunt was acquainted with anybody in the Watsonville Police Department. The court then interjected and inquired whether her aunt had at any time indicated to her that she thought defendant and his brother "had pulled this job." When Mrs. Ham responded in the negative the court asked her if she had formed an opinion at that time that it might have been her husband. To this last question Mrs. Ham responded "I may have. I am not sure." Counsel for defendant then objected "to this questioning from the court," assigned it as prejudicial error and moved for a mistrial. The court then explained that it was necessary "to keep this thing into perspective" because defense counsel's questions "indicated there might have been some reluctance on the part of someone to report this intelligence to the Police Department." Defense counsel thereupon indicated that he was trying to find out whether Mrs. Ham had reported the robbery, and then inquired of Mrs. Ham whether she had reported that her husband and his brother had committed a robbery. Mrs. Ham responded that she did not.

Defendant contends that the court's leading questions constituted prejudicial error because they were intended to influence the jury and infer defendant's guilt. In considering this contention we observe that a judge may examine a witness. (*People* v. *Corrigan,* 48 Cal.2d 551, 555 [310 P.2d 953]; *People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193].) It is his right and duty to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence. (*People* v. *Corrigan, supra,* at p. 559; *People* v. *Martinez,* 38 Cal.2d 556, 564 [241 P.2d 224].) Furthermore, the court has the obligation to speak when it is apparent that the testimony is unclear or that something about the evidence should be clarified. (*People* v. *Partin,* 254 Cal.App.2d 89, 94 [62 Cal.Rptr. 59]; *People* v. *Rigney,* 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].) The trial judge, however, must not become an advocate for either party or, under the guise of examining witnesses, cast aspersions on the defendant or indicate the court's convictions in the case. (*People* v. *Rigney, supra; People* v. *Deacon,* 117 Cal.App.2d 206, 209 [255 P.2d 98]; *People* v. *Boggess,* 194 Cal. 212, 240-241 [228 P. 448]; *People* v. *Mahoney,* 201 Cal. 618, 626-627 [258 P. 607].)

 Viewing the present case in the light of these principles, we observe that the questions do not indicate the court's belief that defendant

was guilty or that it was biased against defendant; rather, they disclose an attempt by the court to obtain a clear and truthful response to the inquiry which counsel for defendant had initiated. This inquiry was whether Mrs. Ham had reported to the police that her husband had committed the robbery in question. That such was the purport of defense counsel's interrogation of Mrs. Ham in this regard is demonstrated by the fact that, after he had objected to the questioning by the court, he himself asked Mrs. Ham whether she had reported to the police that her husband had committed the robbery.

We observe here that upon defendant's objection the trial court desisted from further examination of Mrs. Ham on the subject. We note, further, that although defense counsel did object to the court's interrogation he stated no grounds for the objection, but merely indicated that he was objecting to the trial judge's examination. Upon the making of this general objection the judge informed counsel and the jury that his purpose in questioning the witness was to elicit whether there was a reluctance on the part of Mrs. Ham to report the robbery because she had been informed that her husband was involved. We observe, further, that no motion was made by defense counsel to strike Mrs. Ham's answers and no request was made that the jury be instructed to disregard the questions by the judge and the answers to those questions. Finally we note that the judge told the jury, as part of his general charge, that he had not intended by anything he had said or done or by any questions he had asked to intimate or suggest what they should find the facts to be, and if anything he had said or done seemed to so indicate, the jurors were to disregard the intimation and form their own opinion without regard thereto.

We are, therefore, convinced that the questions as propounded by the court, and the answers given did not constitute error.

### The Exhibits

 Defendant urges prejudicial error from the fact that exhibits from defendant's first trial were, during the interim between the discharge of the jury and the second trial, in the exclusive possession of the prosecutor without notice to defendant, and on ex parte order. Defendant suggests that failure to establish that such exhibits were not tampered with was prejudicial error. Defendant's contention is not well taken. Defendant did not point to any indication of actual tampering. The suggestion of tampering is, therefore, based on the barest speculation. In such cases it is proper to admit the evidence and let what doubt remains go to its weight. (*People* v. *Riser, supra,* 47 Cal.2d 566, 581 [305 P.2d 1]; *People* v. *Barquera,* 208 Cal.App.2d 104, 109 [25 Cal.Rptr. 45].)

## Admission of Bullets, etc.

Defendant next asserts that admission of the bullets, jump wires and gun cleaning brushes taken from defendant's car by Agent Cates was error because there was no proper chain of possession established as to such items. We find this factually untrue.

The items referred to here were found by Agent Cates in the car abandoned and registered to defendant. Cates placed such items into an envelope and placed them in his desk. Cates then turned the evidence over to Special Agent Haggarty who in turn gave them to the Watsonville Police Department. The police surrendered the evidence to Mr. Peter Chang, prosecutor, from whence the items were brought to trial. Each person involved in the chain of custody further testified at trial that such items were in the same condition as when he had been in possession of them.

The evidence in this case reasonably established a continuous chain of custody from the time Cates took possession of these items until their admission in evidence at the trial. (See *People* v. *Riser, supra,* 47 Cal.2d 566, 580-581; *People* v. *Barquera, supra,* 208 Cal.App.2d 104, 108-109.)

Defendant further suggests that it was error to admit the evidence because it was not affirmatively established that defendant was the owner of these items. We would point out that such concern goes properly to the weight to be given the evidence, not to its admissibility. Real evidence is relevant and admissible when the objects submitted are circumstantially connected with the case. (*People* v. *McCall,* 10 Cal.App.2d 503, 507 [50 P.2d 500]; *People* v. *Riser, supra,* 47 Cal.2d 566, 577.)

## Right to Effective Counsel

Defendant's final point is that the court's admonition to defense counsel to save his motions for mistrial for discussion in the absence of the jury inferred to the jury that defense counsel was acting improperly and denied defendant the right to effective counsel. We find these assertions to be without merit.

First, defendant fails to suggest how or why the remark prejudiced him. Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion. (*Solomont* v. *Polk Dev. Co.,* 245 Cal.App.2d 488, 496 [54 Cal.Rptr. 22]; *People* ex rel. *Dept. of Public Works* v. *Garden Grove Farms,* 231 Cal.App.2d 666, 674 [42 Cal.Rptr. 118].)

Second, since defense counsel moved for a mistrial some eight times during trial, it appears to us that the court's request was a proper

exercise of its duty to insure an orderly and expeditious trial. It is after all within the discretion of the court to take steps to insure an orderly and fair trial. (*People* v. *Bronson*, 263 Cal.App.2d 831, 844-845 [70 Cal. Rptr. 162]; *People* v. *Stone*, 239 Cal.App.2d 14, 22 [48 Cal.Rptr. 469].) Here no facts are pointed out demonstrating an abuse of such discretion.

Finally, defendant's suggestion of a denial of his right to effective counsel fails because such concept guarantees only that conduct by counsel will not render a defendant's trial a "farce or sham." The guarantee minimally requires that one's counsel be aware of crucial and dispositive points of law. (*Powell* v. *Alabama*, 287 U.S. 45, 71 [77 L.Ed. 158, 171, 53 S.Ct. 42]; *People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *In re Rose*, 62 Cal.2d 384, 390-391 [42 Cal.Rptr. 236, 398 P.2d 428].) Here there is no indication that preventing defense counsel from making motions for a mistrial in the presence of the jury rendered defendant's trial a "farce or sham."

## Conclusion

Since defendant was placed in jeopardy in the first trial as to count two of the amended indictment, he was in fact acquitted of that count when the jury was discharged in the first trial. Therefore, his trial and conviction on that count in the second trial was improper and of no effect. Accordingly, the conviction of defendant in the present case on the offense charged in count two must be reversed.

Adverting to one instance of error (i.e., the comment by the court which violated defendant's right against self-incrimination as declared in *Griffin*) we have concluded that there is no reasonable possibility that a different verdict would have been reached had the subject error not been committed. Accordingly, we believe that it was harmless error beyond a reasonable doubt. (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) That belief is predicated on the fact that, although the court erred in commenting that defendant was in the best position to explain whether the car belonged to him, there was ample independent evidence of defendant's guilt.

The substantial evidence of defendant's guilt is demonstrated by the following: Groth positively identified defendant as the man who robbed him. He also identified the "getaway car" into which the robber jumped as "a tan colored car with black and white license plates." Defendant was also identified by Officer Maitoza as the man he saw in the store when he responded to the silent police alarm and as the man who sped away in the "getaway car." He also identified the car as "a light colored Chevy with black and white license plates." Such a car was also identified by other

witnesses as the car being pursued by a police vehicle on the night of the robbery. A light-colored 1966 Chevrolet was registered to defendant. Additionally, defendant's father-in-law testified that defendant came to California in a light-colored Chevrolet which had black and white Texas license plates.

The appeal from the denial of defendant's motion for a new trial is dismissed. The judgment upon the conviction for violation of Penal Code section 211, as charged in count I of the indictment, is affirmed. The judgment upon the conviction for violation of Penal Code section 245, subdivision (b), as charged in count II of the indictment, is reversed, with directions that defendant shall not be retried on such count.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1970.