Filed 12/3/15  DCFS Trust v. Aja Rugs CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DCFS TRUST, INC., | D066981 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2012-00088751-CU-BC-CTL) |
| AJA RUGS, INC., | |
| Cross-defendant, Cross-complainant and Respondent; | |
| MOHAMED TABATABAEE. | |
| Defendant, Cross-defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Glenn R. Roberts for Defendant, Cross-defendant and Appellant.

Law Offices of Steven L. Victor and Steven L. Victor for Cross-defendant, Cross-complainant and Respondent.

No appearance for Plaintiff and Respondent.

Defendant and cross-defendant Mohamad Tabatabaee appeals a judgment following a bench trial in which the trial court found in favor of plaintiff DCFS Trust, Inc., and defendant and cross-complainant Aja Rugs, Inc. (Aja). On appeal, Tabatabaee contends the trial court erred by: (1) applying Code of Civil Procedure[1] section 664.6 for its jurisdiction to decide this case; (2) adding a term to the settlement agreement among Aja and its shareholders; (3) awarding Aja more than allowed in the settlement agreement; (4) not protecting the interests of justice; and (5) depriving him of a full trial on disputed issues of fact. For the reasons discussed below, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Prior to 2012, Tabatabaee and Ardeschir Pourfard apparently each owned 50 percent of the stock of Aja, which operated retail stores selling rugs and other home furnishings. In 2011, after disagreements between them, Aja and Pourfard filed a lawsuit against Tabatabaee. They settled that lawsuit by entering into a settlement agreement and mutual general release (Settlement Agreement), effective January 13, 2012.

The Settlement Agreement provided that Tabatabaee and Pourfard were each to receive 50 percent of Aja's inventory, subject to deductions, offsets, and adjustments set forth in, and the accounting and procedures described in, the Settlement Agreement. It further provided:

"[Pourfard] shall receive all (100%) of the shares of stock of [Aja], together with all furniture, fixtures, and inventory of [Aja], subject to

---

[1]     All statutory references are to the Code of Civil Procedure unless otherwise specified.

2

the deductions, offsets, and adjustments contained in this [Settlement] Agreement and the accounting and procedures described in Paragraph 20. [Tabatabaee] will retain no interest in [Aja] in any capacity including, but not limited to, as a shareholder, officer, director, employee, independent contractor, or in any other capacity. . . . Any shares of stock in [Aja] owned or possessed by [Tabatabaee] shall be transferred to [Pourfard] concurrent with [Tabatabaee] and [Pourfard] signing this [Settlement] Agreement."

Paragraph 20 of the Settlement Agreement stated:

"To effectuate the terms of this [Settlement] Agreement and the division of property and inventory hereunder, the parties shall reach a mutual agreement regarding the amounts of money, if any, which may be owed to [Tabatabaee] hereunder by [Aja], or [Pourfard], or the amount of money, if any, which may be owed to [Pourfard] or [Aja] by [Tabatabaee]. Said [a]greement shall be completed on or before 15 days from the date [Pourfard] and [Tabatabaee] sign this [Settlement] Agreement. If the parties are unable to reach agreement on the amount of money, if any, one or each may owe the other, the parties agree to submit this issue to Marshall Afshar at Pars Financial Corp., San Diego, California, and Rahim Sadegholvad for determination of the amounts owed hereunder.

"If there is money owed by any party to any other party hereunder, the amount owed shall be paid in inventory as follows:

"For example only: If it is determined [Tabatabaee] owes [Pourfard] $100,000.00 and there is $1,000,000.00 dollars in inventory, [Pourfard] shall select $100,000.00 of inventory on a cost of merchandise basis only. The parties shall then divide the remaining inventory equally, i.e., $450,000.00 each as they shall agree."

Paragraph 30 of the Settlement Agreement provided that the San Diego County Superior Court "retains jurisdiction over the terms of the settlement, the parties, and this action pursuant to . . . [section] 664.6 to enforce the terms of this Settlement Agreement . . . until performance in full under the terms of this [S]ettlement Agreement . . . ." On May 22, 2012, Tabatabaee and Pourfard executed an amendment to the Settlement Agreement,

3

pursuant to which Tabatabaee agreed to "take full responsibility of" his Mercedes 550 SL 2011 lease agreement and "to pay all payments."

In December 2012, DCFS filed an action against Aja and Tabatabaee, alleging causes of action for breach of contract and common counts arising out of their failure to make lease payments on the Mercedes vehicle. DCFS sought damages in the amount of $26,990.78.

In February 2013, Aja filed a cross-complaint against Tabatabaee, alleging causes of action for breach of contract and indemnity. Aja alleged: "The parties entered into a Settlement Agreement, which [Tabatabaee] has breached. [Tabatabaee] assumed all responsibility for a 2011 Mercedes Benz 550 SL and agreed to indemnify [Aja] from all obligations thereon." Aja further alleged Tabatabaee breached the Settlement Agreement by his "[f]ailure to pay money owed to [Aja] in excess of $400,000 for inventory and other financial obligations, failure to return an Antique Tapestry to [Aja], and failure to pay other obligations to [Aja] per the Settlement Agreement and according to proof." Aja sought damages in excess of $400,000 according to proof, attorney fees, and costs of litigation.

Before trial, Aja filed its trial brief, asserting it would show that "as a result of an accounting concerning Aja's business finances, Tabatabaee owes Aja over $430,000 which, in breach of the . . . Settlement Agreement between those parties, Tabatabaee has refused to pay . . . ."

4

Following a six-day trial, the trial court filed a statement of decision (Statement of Decision), dated September 10, 2014, describing the evidence presented at trial, making findings of fact and law, and issuing its order.[2] The court described Rahim Sadegholvad's testimony that when Tabatabaee and Pourfard divided Aja's inventory, each received about $600,000 to $800,000 in rugs at cost. It also described Marshall Afshar's testimony that he had been Aja's accountant for 20 years and in 2014 prepared a summary of monies disbursed by Aja to Tabatabaee and Pourfard during their business relationship. Tabatabaee received $1,622,703.24 and Pourfard received $792,168.14. It also described Pourfard's testimony that after deduction of the $400,000 in inventory received as collateral as part of the settlement and accounting process, Tabatabaee owed Aja $430,535.10. The trial court found Tabatabaee breached the Settlement Agreement and he owed Aja $355,535.10 based on business transactions between the parties.

On September 10, 2015, the trial court entered judgment for DCFS against Aja and Tabatabaee in the amount of $22,401.63 and for Aja against Tabatabaee on its cross-complaint in the amount of $394, 694.15. The court further ordered that Aja could keep possession and ownership of all rugs in its possession on July 1, 2014. Tabatabaee timely filed a notice of appeal.[3]

---

[2]    A reporter's transcript of the trial proceedings was not made a part of the record on appeal.

[3]    DCFS did not file a respondent's brief in, nor did it appear at oral argument of, this appeal. Nevertheless, Tabatabaee does not challenge the trial court's award of $22,401.63 in damages to DCFS.

5

DISCUSSION

I

*Trial Court's Jurisdiction under Section 664.6*

Tabatabaee contends the trial court erred by applying section 664.6 for its jurisdiction to decide this case. He argues a section 664.6 motion to enforce a settlement cannot be considered in an action other than that in which the settlement was made.

However, as Aja asserts, it did not file, nor did the trial court decide, a section 664.6 motion when the court conducted the six-day trial and decided both DCFS's complaint and Aja's breach of contract cross-complaint against Tabatabaee. On the contrary, the court exercised its general subject matter jurisdiction when it did so. The San Diego County Superior Court is a court of record that has general subject matter jurisdiction over civil and criminal cases. (Cal. Const., art. VI, § 1; 2 Witkin, Cal. Procedure (5th ed. 2008) Courts, § 208, pp. 293-294.) The instant action was a general civil case over which the trial court had, and exercised, general subject matter jurisdiction. Aja's cross-complaint in DCFS's main action alleged Tabatabaee breached the Settlement Agreement by not paying Aja more than $400,000 for inventory and other financial obligations pursuant to the Settlement Agreement. Likewise, Aja's trial brief asserted an accounting of its finances would show Tabatabaee owed Aja over $430,000 and he breached the Settlement Agreement by refusing to pay that amount. Following a lengthy trial, the trial court found Tabatabaee breached the Settlement Agreement and entered a judgment awarding Aja $394,694.15 against Tabatabaee on its breach of

6

contract cross-complaint. The record clearly shows the court exercised its general subject matter jurisdiction to decide Aja's breach of contract claim against Tabatabaee and did *not* decide that claim in the context of a section 664.6 motion.

To the extent Tabatabaee cites language in the Statement of Decision referring to section 664.6, that language does not show the trial court did not have, or did not exercise, general subject matter jurisdiction to decide Aja's breach of contract cross-complaint against him. The Statement of Decision states: "The Settlement Agreement states the Court shall retain jurisdiction over the settlement to enforce its terms, pursuant to [section] 664.6." However, that isolated reference to the Settlement Agreement's provision regarding a trial court's authority to enforce the Settlement Agreement pursuant to section 664.6 does not persuade us the court did, in fact, rely solely on that authority in deciding Aja's breach of contact cross-complaint. Rather, based on Aja's breach of contract cross-complaint and the trial court's Statement of Decision deciding that cross-complaint, we conclude the court clearly exercised its general subject matter jurisdiction and did not rely on section 664.6 to decide this case.[4]

_____

4     In any event, to the extent the trial court's Statement of Decision cited the Settlement Agreement's section 664.6 language, it presumably may have done so to emphasize its authority to decide Aja's cross-complaint and, in so doing, at most merely noted its apparent duplicative or secondary jurisdiction to decide the case in addition to its primary general subject matter jurisdiction over breach of contract causes of action.

II

*Award of Money Damages Against Tabatabaee*

Tabatabaee contends the trial court erred by adding a term to the Settlement Agreement in contravention of its section 664.6 authority. He asserts the court varied from, and added to, the Settlement Agreement's provisions when it awarded Aja money damages instead of merely rug inventory. In support of his argument, he cites language from paragraph 20 of the Settlement Agreement, which provides in relevant part:

> "If there is money owed by any party to any other party hereunder, the amount owed shall be paid in inventory as follows:
>
> "For example only: If it is determined [Tabatabaee] owes [Pourfard] $100,000.00 and there is $1,000,000.00 dollars in inventory, [Pourfard] shall select $100,000.00 of inventory on a cost of merchandise basis only. The parties shall then divide the remaining inventory equally, i.e., $450,000.00 each as they shall agree."

He suggests that language should be interpreted as allowing only an appropriate division of Aja's inventory if he owed Pourfard money.

However, as we concluded above, the trial court exercised its general subject matter jurisdiction in deciding Aja's breach of contract cross-complaint and did not rely (at least solely) on section 664.6. Therefore, Tabatabaee's cited section 664.6 cases are inapplicable. In any event, we conclude the trial court properly interpreted the parties' mutual intent, as expressed in the Settlement Agreement, when it awarded money damages to Aja. Paragraph 20 of the Settlement Agreement provides the parties would mutually agree on, or an accounting would be made to determine, the amount Tabatabaee (or Pourfard) owed the other shareholder in the course of winding up their relationship

8

and that amount would generally be "paid" on division of Aja's inventory by giving that other shareholder a proportionately greater amount of its inventory. However, as Aja asserts, we believe the trial court properly exercised its fact-finding authority when it implicitly interpreted paragraph 20's language as showing the parties mutually agreed that if that financial reckoning between Tabatabaee and Pourfard was made *after* the time of the 50-50 or other division of Aja's inventory pursuant to the Settlement Agreement, then the amount Tabatabaee owed Pourfard would be paid in money (rather than pre-division inventory of Aja). In so doing, the trial court did not, as Tabatabaee argues, improperly add or supply new material terms to the parties' agreement.

The goal of contract interpretation is to give effect to the mutual intention of the parties at the time of contracting. (Civ. Code, § 1636.) Furthermore, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) By interpreting paragraph 20 to allow an award of money damages in the circumstances of this case, the trial court did not err. (Cf. *County of Marin v. Assessment Appeals Bd.* (1976) 64 Cal.App.3d 319, 325 [a trial court should avoid an interpretation that will make a contract harsh, unjust, or inequitable]; *Heidlebaugh v. Miller* (1954) 126 Cal.App.2d 35, 38 ["If necessary to carry out the intention of a contract, words may be . . . [supplied] to make its meaning more clear."].) Furthermore, because Tabatabaee does not cite any evidence, disputed or undisputed, in the record showing that at the time of the Statement of Decision (i.e., September 10,

9

2014) he and Pourfard remained 50 percent shareholders of Aja (or that Tabatabaee had any ownership or other interest in Aja's current inventory), the court properly awarded Aja money damages against Tabatabaee instead of its own inventory (which, of course, would have not given Aja any relief).[5]

## III

### *Award in Excess of Settlement Agreement*

Tabatabaee contends the trial court erred by awarding Aja damages in excess of that allowed by the Settlement Agreement. He argues the Settlement Agreement authorized the court to award $355,535.10 against him only by first awarding Aja that amount of pre-division inventory and then returning one-half of that inventory to him pursuant to the Settlement Agreement. He argues the court erred by awarding Aja money damages, and not inventory, in the amount of $355,535.10 and, in addition, by not awarding him one-half of that inventory pursuant to the Settlement Agreement.

However, as we concluded above, the trial court did not err by implicitly finding the parties mutually agreed that their financial reckoning would be made in money, rather

---

[5] The Statement of Decision supports an implied finding Tabatabaee was no longer a shareholder in Aja and that its inventory had already been divided pursuant to the Settlement Agreement. The Statement of Decision described Rahim Sadegholvad's testimony that when Tabatabaee and Pourfard divided Aja's inventory, each received about $600,000 to $800,000 in rugs at cost. It also described Marshall Afshar's testimony that in 2014 he prepared a summary of monies disbursed by Aja to Tabatabaee and Pourfard during their business relationship. Tabatabaee received $1,622,703.24 and Pourfard received $792,168.14. It also described Pourfard's testimony that after deduction of the $400,000 in inventory received as collateral as part of the settlement and accounting process, Tabatabaee owed Aja $430,535.10.

than in Aja's inventory, if it occurred after Tabatabaee and Pourfard divided Aja's inventory pursuant to the Settlement Agreement and Tabatabaee no longer was a 50 percent shareholder in Aja or had an ownership or other interest in its inventory. Furthermore, the court did not err by implicitly finding that at the time of the Statement of Decision Tabatabaee was not a shareholder in Aja and did not have any ownership or other interest in its current inventory. The court's award to Aja of $355,535.10 in money damages was not excessive, as Tabatabaee argues.

IV

*Trial Court's Fair Administration of Justice*

Tabatabaee contends the trial court erred by not protecting the interests of justice. However, he has forfeited or waived that argument by not citing to the record, or making any substantive argument, showing the court erred in any manner in carrying out the fair administration of justice. Rather, he merely cites general principles of law regarding the administration of justice. "Where a point is merely asserted by [appellant] without any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion." (*People v. Ham* (1970) 7 Cal.App.3d 768, 783, disapproved on another ground in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3.) "Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; see *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an issue is unsupported by pertinent or

11

cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary."]  Accordingly, we need not, and do not, address his contention that the court erred by failing to protect the interests of justice.

V

*Section 664.6 Summary Procedures*

Tabatabaee contends the trial court deprived him of a full trial on disputed issues of fact by following the summary procedures of section 664.6.  However, as we discussed above, the trial court exercised its general subject matter jurisdiction over both DCFS's complaint and Aja's breach of contract cross-complaint.  In so doing, the court did not, contrary to Tabatabaee's apparent assertion, deprive him of those rights and procedures generally allowed litigants in civil actions, including the right to present his defense at trial.

Furthermore, Tabatabaee does not cite to the record or otherwise refer to any specific rights or procedures he was denied showing that he was deprived of a full and fair trial on the disputed issues of fact in this case.  He does not show the trial in this case was, in fact, a summary proceeding under section 664.6 and not a full trial on the complaint and cross-complaint.  By not presenting any substantive legal argument showing the trial court erred in this manner, he has waived or forfeited this contention and we need not address its merits.  (*People v. Ham*, *supra*, 7 Cal.App.3d at p. 783; *Jones v. Superior Court*, *supra*, 26 Cal.App.4th at p. 99; *Landry v. Berryessa Union School Dist.*, *supra*, 39 Cal.App.4th at pp. 699-700.)

12

## DISPOSITION

The judgment is affirmed.  Aja is entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


PRAGER, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.